[Civ. No. 8064. Third Dist. Aug. 6, 1952.]

EUGENE D. PHELPS et al., Respondents, v. PACIFIC GAS AND ELECTRIC COMPANY, Appellant.

Robert H. Gerdes, W. R. Dunn, Loyd E. Hewitt and Frederick W. Mielke, Jr., for Appellant.

Clewe, Martin & Blade and Sterling Carr for Respondents.

PEEK, J.—This controversy arises out of a dispute between plaintiffs and defendant concerning title to a certain placer mining claim located on the Feather River in Butte County. In 1942 plaintiffs instituted an action against defendant to quiet title to and recover possession of the claim in question, together with damages for trespass thereon. Defendant likewise sought to have its title quieted. Upon the issues so joined the cause proceeded to trial, resulting in a judgment for defendant, which was reversed by this court on appeal. (84 Cal.App.2d 243 [190 P.2d 209]—hearing in Supreme Court denied.) Thereafter plaintiffs amended their complaint and defendant by its answer alleged that the land was then occupied and used by it in the operation of a power plant which furnishes electric power for public use and prayed that if the rights of plaintiffs were found to have been invaded that the court fix the compensation therefor. The cause was again tried, at the conclusion of which judgment was entered in favor of plaintiffs, and defendant has now appealed.

The pertinent facts as stated in the former appeal are as follows:

"The plaintiffs as copartners doing business under the firm name and style of Hatetna Mining and Exploration Company are the successors in interest to a certain mining claim known as the Boulder Bar Placer Mining Claim located and filed by one Louis Lammet and one David Gramps in 1898. . . . The action was dismissed insofar as it involved lands outside the boundaries of Section 27 as described in the above mentioned resurvey of that section approved in 1941."

"The controversy respecting the disputed title to the property in question arose out of the following factual situation: Section 27, together with other portions of Township 23, was officially surveyed in 1875 by one E. A. Von Schmidt. The field notes of this survey were incorporated into a plat conformable thereto and approved by the United States Surveyor General for California on November 24, 1875. By that plat Section 27 was shown to be located in the mountains to the east of the Feather River, and according to the field notes made by Von Schmidt in laying out the section on the ground, neither the western nor the northern boundaries thereof touched upon said river.

"Thereafter in 1880, the United States granted and patented all of said Section 27 to the Central Pacific Railroad Company, to whom defendant is successor in interest.

"In 1898, as above stated, presumably in reliance upon the survey of 1875, plaintiffs' predecessors located said mining claim on land believed to be outside and to the west of the western boundary of said Section 27 and on unsurveyed public land.

"In 1936, the defendant, in connection with a contemplated power project, requested a resurvey of Section 27, and in 1938 the General Land Office ordered the same to be made, naming surveyors Wilson and Forrest to resurvey portions of Township 23, including Section 27, and to extend the official survey into the remaining unsurveyed portions of said township. These surveyors proceededs, or attempted, to retrace the lines called for by Von Schmidt in his notes, but were unable to find many of the monuments or corners which Von Schmidt stated that he set. According to plaintiffs, if such monuments as wooden stakes were set they probably had been destroyed by various fires which had occurred subsequently in that vicinity.

"According to the field notes and the official plat approved on March 17, 1941, Wilson and Forrest, in reestablishing the boundaries of Section 27, found the same to extend over the North Fork of the Feather River and to include substantially all of the plaintiffs' mining claim. It is to be further noted that the topography called for in the resurvey of the western and northern boundaries of said section and in particular the northwest corner thereof is entirely different from that called for in the Von Schmidt field notes."

The defendant again contends, as it did on the first appeal, that the United States is the real party in interest or at least an indispensable party in an action to establish its title and oust one who claims public domain as included within a patent, and that the trial court had no jurisdiction over the action. It is further contended that, since plaintiffs failed to exhaust their administrative remedies by appeal from the adverse decision of the Land Department, no remedy was available to them in the lower court. In this connection, appellant argues that the trial court was without jurisdiction to "review, reverse or annul" the findings and decision of the Land Department.

After examination of the contentions set forth above it is apparent that all were decided adversely to appellant on the former appeal. It was there held that (headnote 3): "Parties who held land under a government patent with description thereof in accordance with an official government

approved original survey, were not bound by a resurvey ordered by the General Land Office which established different boundaries for such patented land subsequent to issuance of the original patent.'' In commenting upon this holding we stated at page 247: ''Both respondent [defendant] and appellants [plaintiffs] have urged in their own favor the previously mentioned rule that an official government survey may not be collaterally attacked. However, respondent [defendant] insists that by virtue of said rule plaintiffs are bound by the resurvey of 1941 which reestablished the boundaries of Section 27. Obviously such argument is not valid for it wholly disregards the fact that respondent's [defendant's] title is derived from a patent to land described and delineated by the Von Schmidt Survey of 1875 and not the resurvey of 1941. The present case is thus similar on its facts to *Gleason* v. *White, supra* [199 U. S. 54], wherein it was held that a patentee who took his land with reference to an original but erroneous survey could not recover from a subsequent patentee who took under a resurvey which included, as being within the section, a tract of land lying to the east of the section as originally surveyed. To hold otherwise, it was said, would allow the first patentee to profit by a mistake of the government of which he must have been cognizant.''

◼ As to the contention that the plaintiffs are asserting interests adverse to the United States, and that they are bound by the determination of the Land Department respecting the resurvey of 1941, we further stated on the former appeal at page 249:

''Respondent [defendant] also asserts that appellants [plaintiffs] by failing to appeal from the order of the Land Department dismissing their protest to the survey of Wilson and Forrest, abandoned such protest and likewise thereby failed to exhaust their administrative remedies and consequently they are now precluded from attacking said survey. However, the point is immaterial here for the reason that appellants [plaintiffs] are neither attacking the resurvey nor the right of the government to make it.

''As above stated, the right of the government to resurvey its lands and make corrections of former surveys is unquestioned. The present issue is one of title solely as between plaintiffs and defendant, and the conclusion herein reached is entirely consistent with a concession that Wilson and Forrest in their corrective survey placed the west line of

Section 27 where it should have been placed by Von Schmidt but in fact was not.''

The decision in the former appeal clearly established as the law of the case that the respective rights of the parties were to be determined by reference to the Von Schmidt survey of 1875. In this connection the opinion states at page 249:

''The respondent [defendant] further contends in support of the judgment that its predecessor in interest having been granted Section 27 of Township 23, it took whatever might later be found to be included within that section by a survey, and that land may be so granted by township and section which at the time of the grant was unsurveyed public land. Reliance is placed upon numerous cases including [citing cases]. Such cases, however, are not in point. In the first place respondent's [defendant's] argument assumes that the section in question was not surveyed at the time of the original grant to the railroad company, and secondly, the factual situation here is entirely dissimilar to cases wherein the land in question had never been surveyed, either correctly or incorrectly at the time of the grant and the grantee contracted to take a particular section, the extent of which was to be later ascertained by a survey. In the present case the property granted and patented to the railroad had been surveyed prior thereto and the patent designated land with reference to the survey and the approved plat of 1875. The railroad did not take unsurveyed land by section and township. It took a particular parcel of land with reference to an approved survey of the United States government.

''The conclusion is inescapable that the boundaries of Section 27, insofar as the title of the respective parties to the land in controversy is concerned, were established by the survey and approved plat of 1875, and the conclusion of the trial court that the survey of Von Schmidt was fraudulent cannot be supported.''

It is also contended by defendant (appellant) that the evidence is insufficient to show that a valid mining claim was established in 1898 by respondents' predecessors in interest. It is argued that the description is insufficient; that there is no competent evidence that the original claim was posted on the ground or that the claim was monumented, and that the amended notice of claim which attempted to more fully describe the claim was ineffectual because it was recorded after the Power Site Withdrawal Order covering the area in dispute.

This contention is without substance. The record discloses that in 1898 respondents' predecessors in interest recorded Notice of Location of the claim in question. It is unnecessary to discuss the question of whether or not their acts were sufficient since the trial court found that:

"Plaintiffs and their predecessors in interest were in the actual, exclusive and adverse possession of said mining claim continuously for more than 40 years prior to the filing of the Complaint herein, and ever since June 20, 1898, or thereabouts, have claimed to own and were the owners of the same and of the right to the sole and exclusive possession thereof against the whole world save with respect to the interest of the United States of America.

"Ever since May 20, 1933, or thereabouts, and until defendant herein took possession of said premises, plaintiffs and their predecessors in interest engaged in the business of mining upon said mining claim."

These findings which are not here disputed sufficiently established respondents' title to the claim. (*Hess* v. *Moodey,* 35 Cal.App.2d 401 [95 P.2d 690]; *Lind* v. *Baker,* 31 Cal. App.2d 631 [88 P.2d 777]; *McLean* v. *Ladewig,* 2 Cal.App.2d 21 [37 P.2d 502]; 17 Cal.Jur. p. 410.)

As to the remaining portion of said contention it is argued that the boundaries of respondents' claim were not sufficiently described or established and as a result the area for which the court fixed compensation cannot be determined. This argument is likewise without merit. The record conclusively shows that the area taken by appellant for power purposes was within the claim. All that the judgment purports to do is to compensate plaintiffs for the area taken lying within section 27 according to the 1941 survey upon which defendant has relied. In fact, the area so taken is set forth and described in detail by appellant's pleadings.

■ It is next contended that the trial court erred in refusing defendant's request for a jury trial. The record does not support such a contention. It shows that when the cause was set for retrial plaintiffs requested a jury. Sometime thereafter plaintiffs filed a proper notice of waiver of such request, and served defendant with a copy of such notice; however, the clerk of the court did not give defendant notice of such waiver as required by section 631 of the Code of Civil Procedure. At the commencement of the retrial on the issue of title defendant's counsel stated that a jury trial was demanded on all issues unless plaintiffs' counsel would

stipulate that a jury would not be requested on the trial of the later issue of damages in the event it became necessary to try the same. Plaintiffs did not so stipulate and defense counsel thereupon demanded a jury trial. The court in ruling upon such motion stated that the same would be taken under advisement to be determined in the event such situation later developed. The cause then proceeded on the sole issue of title. In its order fixing date for the trial on the issue of damages the court concluded with the statement that either party could, within the period stated therein, demand a jury and deposit fees for the same in accordance with such order. Defendants made no request in accordance therewith, nor was the request renewed when the trial was resumed. It is therefore apparent that the entire trial proceeded without a jury in accordance with appellant's expressed desires. Hence, we find no merit in the contention that the court committed prejudicial error in not allowing it to proceed before a jury.

█ Defendant's final contention is that if plaintiffs were entitled to anything it was the value of what was taken at the time of the taking, plus severance damages. Therefore, it says the court erred in fixing the value of the property as of December 4, 1950, had it remained as it was in 1940 and awarding interest thereon from the last-mentioned date. This contention is likewise without merit.

In the case of *Los Angeles County Flood Control Dist.* v. *Hansen,* 48 Cal.App.2d 314, 318 [119 P.2d 734], the court, in reversing a judgment in favor of the district for the reason of the trial court's failure to award interest from the date of the taking, concluded with this order:

"The trial court is directed to add to the judgment heretofore returned a finding and order that the defendants are entitled to interest at the rate of 7% per annum upon the respective amounts found by the jury as the market value of the respective parcels of land or of defendants' interest therein sought to be condemned and the respective amounts found by the jury as severance damage, from the dates on which possession was taken of the respective parcels to the date of the payment of the awards."

The judgment is affirmed.

Adams, P. J., and Van Dyke, J., concurred.

A petition for a rehearing was denied August 30, 1952, and appellant's petition for a hearing by the Supreme Court was denied September 25, 1952.