[Civ. No. 4782.   Fourth Dist.   Nov. 10, 1954.]

CALIFORNIA DOLOMITE COMPANY (a Corporation), Plaintiff, v. EARL S. STANDRIDGE et al., Appellants; NICHOLAS G. BAXTER et al., Respondents.

Anderson, Howard and Zillgitt for Appellants.

E. John Eriksson and Homer M. Bail for Respondents.

BARNARD, P. J.—This is an appeal from a judgment quieting title to certain mining claims.

Several placer mining claims were located in 1949 by the Baxter group of defendants. After certain developments they leased these claims to the California Dolomite Company, which entered into possession and commenced active mining and milling on the premises. A year and a half later, Standridge and Mingus made claim to the royalties, basing their claim of title on locations claimed to have been made by Mingus and his predecessors in 1929 and 1931. Standridge claimed under Mingus and apparently did not appear in the the picture until 1950. The Dolomite Company brought this action to compel the conflicting claimants to interplead and litigate their claims. By appropriate pleadings the different claimants sought to quiet their title to these claims, and the action was tried as if they were plaintiffs and defendants, respectively.

At the trial it appeared, without dispute, that Mingus and others had in 1929 and 1931 recorded six location notices, each describing a different quarter section of land by refer-

ence to the government survey, and that the claims here in question were included within some of the quarter sections thus described. The next instrument filed of record was a notice to hold, filed in 1936. Nothing was filed in 1937, and a notice to hold was filed in 1938. Proof of labor was filed for 1939, but nothing was filed for 1940. Proof of labor was filed for 1941, and notices to hold were filed for the years 1942 to 1949, inclusive. Proof of labor was filed for 1950 and 1951, both of these being after the Dolomite Company was actively mining the property under its leases. A large amount of evidence was received as to what had been done by various parties from 1929 on, with reference to the posting of the original location notices on the property, the building of monuments, the doing of work, visits to the property and the time spent thereon by various persons, what was done and seen at different times in various places, and other matters going to the questions as to whether legal requirements had been fulfilled, the kind and nature of the possession taken, and the use made of the property throughout the years between 1929 and 1949. The court found in favor of the Baxter group, finding that they had located the claims in good faith; that at all material times they were and are the owners of these mining claims; that the claims of Standridge and Mingus, and each of them, are without any right whatever; that neither of them has any right, title or interest in the property; that it is not true that they acquired any interest by reason of the location notices recorded in 1929 and 1931; that it is not true that "all acts necessary and required to maintain said claims have been performed upon said claims, and that the same are valid and subsisting at the present date"; and that it is not true that these claims are now owned and held by these plaintiffs or that they are entitled to the possession thereof. Judgment was entered accordingly, quieting title to these claims in the Baxter group, and Standridge and Mingus have appealed from that judgment.

The appellants contend that the court's opinion and judgment were based squarely upon the fact that he considered the testimony of Mingus so contradictory and unsatisfactory as not to be sufficient to support a finding that copies of the location notices which were recorded in 1929 were actually posted upon the quarter sections claimed thereby. This contention is based upon a minute order entered some five months before judgment was entered. However, there were several hearings thereafter with reviews of the evidence, a

rereading of portions of the evidence, and arguments, and the findings are not limited to that issue. With this background it is then contended that the recording of the location notices in 1929 and 1931, and the filing of the affidavits of work and notices to hold, made it unnecessary for the appellants to prove that location notices were posted on the ground because of the provisions of section 2332, U. S. Rev. Stats. (30 U.S.C.A. ch. 2, § 38), and the construction of that section as applied in *Lind* v. *Baker*, 31 Cal.App.2d 631 [88 P.2d 777]; *Hess* v. *Moodey*, 35 Cal.App.2d 401 [95 P.2d 699], and *Phelps* v. *Pacific Gas & Elec. Co.*, 112 Cal.App.2d 558 [246 P.2d 997]; that the recording and filing of these papers sufficiently showed all the possession required by law and conclusively established appellants' title, since no other acts are required other than those usually exercised by the owners of such mining claims; that appellants' recorded location notices were prima facie evidence of the performance of all statutory requirements; that the evidence was not sufficient to support the finding to the effect that the location notices were not posted; that since the respondents had knowledge of appellants' claims through the recorded location notices the lands were not open to relocation; and that, in any event, the court erred in refusing to grant a new trial on the ground of newly discovered evidence.

Appellants' main contention, that the recording of the location notices in 1929, and the filing of proofs of labor and notices to hold, are sufficient to obviate any necessity for further proof on their part, because of section 2332, U. S. Rev. Stats.; and that this is established by such cases as *Lind* v. *Baker* and *Hess* v. *Moodey*, cannot be sustained. The mere recording and filing of such papers without regard to what was done on the ground could not be conclusive, and the cited cases do not so hold. Assuming that such recording and filing would be sufficient to make out a prima facie case, this may well be overcome by evidence of the factual situation and what was actually done. Section 2332, U. S. Rev. Stats., provides that where persons have held and worked their claims for the required period, evidence of such possession and working shall be sufficient to establish a right to a patent. That the elements of holding and working the claims, and the matter of continued possession in the manner contemplated by the mining laws, are questions of fact and dependent upon the evidence received in a particular case, is fully recognized in *Lind* v.

*Baker*, *Hess* v. *Moodey,* and all the other cases to which our attention has been called. Factual questions were here presented with respect to whether the legal requirements had been met, including the proper posting of notices, the erection of monuments on the ground, the doing of work, the nature of the possession taken and held, and the use made of the claims in question. Affidavits that work has been done are not conclusive and the other party may prove that the work was not, in fact, done. (*Brown* v. *Murphy,* 36 Cal.App.2d 171 [97 P.2d 281].) Affidavits of intention to hold would not be controlling if, for other reasons, the party was not entitled to hold regardless of whether or not work was done for that year.

If, as we think, factual questions were properly presented and considered by the court, the evidence amply sustains the findings and judgment. The record is voluminous, and it would serve no useful purpose to review the evidence in detail. The testimony of Mingus, the main witness for the appellants, was not only self-contradictory but was so obviously incorrect in many respects, as shown by a number of well established facts, that the judge was justified in concluding, as stated by him, that he was unable to accept such testimony as sufficient to support findings favorable to the appellants. Mingus was 82 years of age and his testimony was far from satisfactory. Among other things, he testified that he lived for a part of one summer in a cabin which was shown to have been torn down several years before, and that he lived for some time in an old tunnel which was shown to have been occupied at that time by others who had not even seen him there. It was clearly shown that some notes he said he had put in certain places were actually placed on other quarter sections. It rather clearly appeared that Mingus did not know where he did any such work as he claimed to have done, and the trial judge observed, "he did it some time place out in this general territory, all true, but the type of work was not such as to impress itself upon anybody. He said himself the work he did there in his acts of possession amounted to scratching the surface in a number of places, with one exception." This exception was one old tunnel in which considerable work had been done, but there was substantial evidence that this work had been done by a number of other people over many years. The evidence, with the reasonable inferences therefrom, fully supported the conclusion that the original location notices had not been posted

on the property, and that no proper monuments had been constructed. A great many people had prospected over these properties over the intervening years, some of them spending many months there, and none of them ever saw Mingus there. None of them ever saw any evidence of his claimed location notices or monuments with one exception, which is neither convincing nor controlling. There is no evidence which would indicate the actual, visible, open and hostile possession required by law, making full allowance for the difference between the showing required in connection with a mining claim and that required for agricultural lands. No possession was shown which was open and notorious, and none of the many witnesses who were on the property during considerable periods over the years ever saw Mingus there and he never saw any of them. No hostile claim was ever made by him until long after respondents' locations were made. There was no continuous possession shown, there was no evidence that anyone was there between 1929 and 1936, Mingus said he visited the property once a year but might have missed some years, and he testified that he thought he was out there one, two or three times between 1942 and 1947. No exclusive possession is shown as it appeared that other locators were in possession for a time in 1934, in 1937 and in 1947. While the evidence was conflicting in some respects it sufficiently supports the court's findings.

On the matter of claimed newly discovered evidence, in connection with the motion for a new trial, it was claimed that since the trial Mingus had located a surveyor who had made a survey of these sections in 1929, that this surveyor was one of the original locators of these claims, and that he would testify that he assisted in, saw or personally placed said location notices on the ground and in the proper places on the quarter sections described in such notices. There was a very unsatisfactory showing of diligence in obtaining any such evidence in time for the trial. This surveyor stated in an affidavit "that he has no records relative to any surveys made in 1929 for S. M. Mingus, or at any other time." He also stated that he had continuously resided in the same place since 1922, that he had operated a regular office for the last 12 years, and that he was listed in the telephone book. While he stated in another affidavit that he assisted in placing location notices on said claims on the quarter sections described in each notice, and while this would have corroborated Mingus' testimony with respect to one point, it would merely

have added to the existing conflict in the evidence and would have been far from conclusive in view of the evidence as a whole on all of the points involved. The affidavit of Mingus stated that he located this surveyor on September 20, 1952, and this matter was not brought to the attention of the court until February, 1953, although an extensive hearing as a part of the case was held in November, 1952, and judgment was not entered until February, 1953. No abuse of discretion appears in this connection.

The judgment is affirmed.

Griffin, J., and Mussell, J., concurred.

A petition for a rehearing was denied December 7, 1954, and appellants' petition for a hearing by the Supreme Court was denied January 3, 1955. Traynor, J., was of the opinion that the petition should be granted.