[Civ. No. 8649.   Fourth Dist., Div. Two.   May 27, 1968.]

RIVERSIDE COUNTY FLOOD CONTROL AND WATER CONSERVATION DISTRICT, Plaintiff and Respondent, v. GERARD R. HALMAN et al., Defendants and Appellants.

Hill, Farrer & Burrill and Robert Nibley for Defendants and Appellants.

Ray T. Sullivan, Jr., County Counsel, Gerald J. Geerlings and Steven A. Broiles, Deputy County Counsel, for Plaintiff and Respondent.

TAMURA, J.—Defendant appeals from that portion of a judgment in condemnation denying prejudgment interest on the award.

Plaintiff (District) brought an action in eminent domain to acquire a flowage easement over portions of defendant's land in connection with the construction of a flood control levee along a segment of the San Jacinto River, including its tributary, Bautista Creek, in Riverside County. The chronology of the pertinent events was as follows: Plaintiff filed its action on April 21, 1961; the levee was completed on May 23, 1962; trial commenced on March 14, 1966, and judgment in condemnation was entered on July 8, 1966. There was no order of immediate possession. Defendant claimed interest on the award from the date of completion of the levee on the ground that that was the date his property was damaged. However, the court found that the property was neither taken nor damaged prior to entry of judgment and denied prejudgment interest.

Defendant contends that while the levee has not yet resulted in physical injury to his lands, it did cause compensable depreciation in its market value and that, hence, interest accrued as of the date of its completion. We have concluded that the trial court's determination was correct and that the judgment should be affirmed.

Viewing the evidence in the light most favorable to the prevailing party below, as we are required to do on appellate review (*Waller* v. *Southern Pac. Co.*, 66 Cal.2d 201, 204 [57 Cal.Rptr. 353, 424 P.2d 937]), it may be summarized as follows:

The watershed of the San Jacinto River consists of approximately 250 square miles of rough, steep, mountainous terrain with little absorptive cover. The river emerges from the San Jacinto Mountain at a sharp gradient and levels off as it enters the valley below. Due to the rapid run-off and the gradient of the river, during intense storms water accumulates into a peak discharge as it enters the valley causing floods in the Hemet-San Jacinto area. Existing levees in the Hemet-San Jacinto area which had been constructed of uncompacted sand with brush and wire revetments only provided flood protection from storms having a frequency of up to once in eight years.

Basically the flood control project in question, a joint undertaking of the United States Corps of Engineers and the District, involved the construction of a protective levee along the left-hand side, looking downstream, of Bautista Creek to its natural confluence with the San Jacinto River and thence downstream along the San Jacinto for about 4 miles. The levee commences at a point near the City of Hemet and extends downstream for a distance of 5 miles terminating at a point approximately 80 feet upstream from defendant's property. It is designed to contain a flow of 86,000 cubic feet per second which is the estimated flow which will be produced by a storm having a frequency of once in 166 years. Prior to the construction of the project, a design storm would have subjected about 13,000 acres in the Hemet-San Jacinto area to inundation by flood waters; it was estimated that the new levee would eliminate flood hazards from about 9,800 acres.

The San Jacinto River traverses defendant's land which comprises 163.39 acres of which 27.21 acres is river bottom subject to a 1951 District easement for flood control and water conservation purposes. By its present action the District sought a flowage easement over approximately 80 acres, 10.4 acres lying adjacent to and on the right-hand side of the river and 69.13 acres on the left-hand side. Except where the adjoining hills extend to the river, the 10.4 acre parcel is essentially a part of the river, the elevation being approximately river bottom. The elevation of the 69.13 acre parcel varies from the invert of the river to 2 to 3 feet above it at its outer limits. Except for two wells, a reservoir and perimeter fencing the land is unimproved farm land.

A short distance upstream from defendant's land, the District has constructed a training dike which projects from the

new levee, extends at an angle downstream towards the river and connects with an old levee which crosses defendant's property. The dike, which the District has obligated itself to maintain, is designed to direct into the river bottom a flow produced by a storm having a frequency of once in eight years.

The flowage easement condemned by the District consisted of a perpetual right to overflow, flood and submerge the land subject to it with the right to prohibit construction or maintenance of buildings or other structures, reserving, however, to the owner all other rights to the use and enjoyment of the land. The easement does not prevent defendant from protecting the remainder of his land by the erection of protective barriers.

The only engineering testimony on the after effect of the new levee on defendant's land was that provided by the chief engineer for plaintiff. In substance, his testimony was as follows: The levee will not increase the frequency of inundation; the 10.4 acre parcel will be subject to annual flooding as it has in the past and the 69.13 acres will be flooded during a storm having a frequency of once in eight years to the same extent in area as in the past. In the before condition, a design storm (one producing 86,000 cubic feet per second) would have resulted in a river flow of 42,000 cubic feet per second past defendant's land while the remaining 44,000 cubic feet per second would have escaped from the river, sheet flowed across the countryside, and eventually found its way into the San Jacinto River, most of it upstream from defendant's property but some flowing over defendant's lands and entering the river at or shortly downstream therefrom. In the before condition a design storm would have inundated substantially all of defendant's land. In the after condition it is expected that such a storm will increase the depth of inundation by 1½ to 2 feet as compared to the depth in the before condition and increase the velocity from about 6 feet per second to approximately 7½ feet per second. However, there would be no additional scouring or erosion of the lands because the increased depth would offset the effect of any increase in velocity. A prohibition against structures was included in the flowage easement in order to safeguard downstream flood control facilities and bridges from damage from floating debris should structures be washed away during floods.

The completion of the levee caused no physical injury to

defendant's property; he remained in possession and continued to farm the lands. Although he testified that he altered his crops from alfalfa and potatoes to grain, there is some uncertainty whether he substituted crops because of the existence of the levee or for other unrelated reasons. Plaintiff's appraisers testified that the utility of the land for its highest and best use—heavy agricultural—was unchanged by the taking of the easement or the construction of the levee, and that the diminution in fair market value was primarily attributable to the fact that a recorded flowage easement containing a restriction against structures would make the land less attractive to investors and lenders. They testified that it would have been economically unfeasible to develop the land for subdivision purposes in its before condition because of prohibitive costs of raising the elevation of the land by artificial fill and of constructing protective works.

The jury fixed the market value of the easement at $67,200 and severance damages at $2,450, for a total award of $69,650.[1]

Upon entry of the verdict, defendant petitioned the court to order accrual of interest on the award from the date the levee was completed. Following submission on briefs, the court found that "plaintiff has not at any time taken possession of, or damaged, said parcels of real property within the meaning of section 1255b of the Code of Civil Procedure," concluded that defendant was entitled to interest only from date of entry of the judgment, and entered judgment accordingly. Defendant appeals from that portion of the judgment denying prejudgment interest.

The right to interest on a condemnation award springs from the judgment. (*People* ex rel. *Dept. of Public Works* v. *Campus Crusade for Christ, Inc.,* 255 Cal.App.2d 202, 204 [63 Cal.Rptr. 67]; *People* ex rel. *State Park Com.* v. *Johnson,* 203 Cal.App.2d 712, 722 [22 Cal.Rptr. 149]; *Capistrano Union High School Dist.* v. *Capistrano Beach Acreage Co.,* 188 Cal.App.2d 612, 615 [10 Cal.Rptr. 750, 92 A.L.R.2d 349].) Ordinarily, interest commences from the date of entry of the judgment. (*Snapp* v. *State Farm Fire & Cas. Co.,* 60 Cal.2d 816, 818 [36 Cal.Rptr. 612, 388 P.2d 884]; *Bellflower*

---

[1]There was a wide disparity in the opinions of the valuation witnesses for the respective parties. Defendant's appraiser fixed the value of the easement and severance damage at $114,425. Defendant estimated his damages to be $320,197. One appraiser for plaintiff fixed market value and damages at $48,000 and the other at $55,000.

*City School Dist.* v. *Skaggs,* 52 Cal.2d 278, 280 [339 P.2d 848].) However, where property is taken or damaged prior to judgment, the condemnee's right to just compensation includes the right to have the award draw interest from the date of possession (*Seaboard Air Line Ry. Co.* v. *United States,* 261 U.S. 299, 306 [67 L.Ed. 664, 669, 43 S.Ct. 354, 356]; *Metropolitan Water Dist.* v. *Adams,* 16 Cal.2d 676, 680-681 [107 P.2d 618]), or the date the property was damaged (*Youngblood* v. *Los Angeles County Flood Control Dist.,* 56 Cal.2d 603, 611 [15 Cal.Rptr. 904, 364 P.2d 840]; *Heimann* v. *City of Los Angeles,* 30 Cal.2d 746, 758-759 [185 P.2d 597] [overruled on other grounds, *County of Los Angeles* v. *Faus,* 48 Cal.2d 672, 679 [312 P.2d 680]]; *Garden Water Corp.* v. *Fambrough,* 245 Cal.App.2d 324, 329 [53 Cal.Rptr. 862].) The rules are now codified in section 1255b of the Code of Civil Procedure which provides that an award shall draw interest from the earliest of the following: "(1) The date of the entry of judgment. (2) The date that the possession of the property sought to be condemned is taken or the damage thereto occurs. (3) The date after which the plaintiff may take possession. . . ." (Code Civ. Proc., § 1255b.) Plaintiff not having obtained an order for immediate possession, the right to interest in the present case turns upon the question whether the property was taken or damaged prior to judgment.

Preliminarily, there is a question whether the court, rather than the jury, should pass upon the owner's claim to interest as an incident of his right to just compensation where he asserts that the condemnor has taken possession of or damaged his property prior to entry of judgment. Section 1255b of the Code of Civil Procedure is silent in this respect.[2] It has been held that the question when interest commenced under section 1255b, prior to its 1961 revision, where an order of possession had been issued was a matter for the court and that a refusal to instruct the jury on that issue was not error. (*People* ex rel. *Dept. of Public Works* v. *Salem Dev. Co.,* 216 Cal.App.2d 652, 653 [31 Cal.Rptr. 193].) It has also been held

---

[2] See California Law Revision Commission, Tentative Recommendation and a Study Relating to Condemnation Law and Procedure, Number 1—Possession Prior to Final Judgment and Related Problems, September 1967, pp. 1138-1140. The report points out the uncertainty in the existing law and recommends that section 1255b of the Code of Civil Procedure be amended to specify that the court, rather than the jury, should assess interest as well as any offset against interest.

to be the function of the court rather than the jury to determine the amount of offset against interest under subsection (b) of section 1255b where the owner continues in possession after the date interest begins to accrue.[3] (*People* ex rel. *Dept. of Public Works* v. *McCoy*, 248 Cal.App.2d 27, 30 [56 Cal.Rtpr. 352]; *People* ex rel. *Dept. of Public Works* v. *Guimarra Vineyards Corp.*, 245 Cal.App.2d 309, 322 [53 Cal. Rptr. 902]; but see *City of North Sacramento* v. *Citizens Utilities Co.*, 218 Cal.App.2d 178, 187 [32 Cal.Rptr. 308].)

In our opinion the question whether the property has been taken or damaged within the meaning of section 1255b so as to entitle the condemnee to prejudgment interest on the award is an issue to be determined by the court rather than the jury.[4] Article I, section 14, of the Constitution only requires the issue of compensation or value to be tried by a jury; all other questions of fact or of mixed fact and law are to be tried by the court. (*People* ex rel. *Dept. of Public Works* v. *Russell*, 48 Cal.2d 189, 195 [309 P.2d 10]; *People* v. *Ricciardi*, 23 Cal.2d 390, 402 [144 P.2d 799]; *People* ex rel. *Dept. Pub. Wks.* v. *L. A. County Flood etc. Dist.*, 254 Cal.App.2d 470, 477 [62 Cal.Rptr. 287].) Thus, where compensation is sought for alleged impairment of an abutting owner's right of access to a public street, it has been consistently held that it is for the trial court and not the jury to determine "as a matter of law" whether the interference has been so substantial or unreasonable as to entitle the owner to compensation. (*Breidert* v. *Southern Pac. Co.*, 61 Cal.2d 659, 664 [39 Cal.Rptr. 903, 394 P.2d 719]; *People* ex rel. *Dept. of Public Works* v. *Russell, supra,* 48 Cal.2d 189, 195; *People* v. *Ricciardi, supra,* 23 Cal.2d 390, 402-403; *People* ex rel. *Dept. Public Works* v. *DiTomaso,* 248 Cal.App.2d 741, 762 [57 Cal.Rptr. 293]; *People* ex rel. *Dept. of Public Works* v. *Presley,* 239 Cal.App.2d 309, 313 [48 Cal.Rptr. 672].) Once the right to compensation is determined, it is for the jury to determine the extent of

---

[3]Subsection (b) of section 1255b provides: "(b) If after the date that interest begins to accrue the defendant continues in actual possession of or receives rents, issues and profits from the property, the value of such possession and of such rents, issues and profits shall be offset against the interest that accrues during the period the defendant continues in actual possession or receives such rents, issues or profits."

[4]Neither party has suggested either in the court below or before this court that the interest issue should have been submitted to the jury. Therefore, even assuming, *arguendo,* that it should have been tried by a jury, a jury was effectively waived. (*Frazure* v. *Fitzpatrick,* 21 Cal.2d 851, 860-861 [136 P.2d 566]; *Phelps* v. *Pacific Gas & Elec. Co.,* 112 Cal. App.2d 558, 565 [246 P.2d 997].)

diminution in value which the property has suffered. (*Breidert* v. *Southern Pac. Co., supra,* p. 666.) So, in the instant case, the question whether the property was taken or damaged so as to entitle the condemnee to prejudgment interest on the award presented a mixed question of fact and law for the trial court. Once the right to interest is thereby determined, the law prescribes the rate.

Implied findings on the factual issues presented in this mixed question must stand if there is substantial evidence to support them. (See *People* ex rel. *Dept. of Public Works* v. *Russell, supra,* p. 195; *People* v. *Millett,* 110 Cal.App. 237, 238 [293 P. 807].) In the case under review the trial court's determination is supported by substantial evidence and is consistent with the applicable law.

Since the right to interest stems from the right to just compensation, the "damage" which gives rise to that claim must be constitutionally compensable. Thus while the enactment of legislation authorizing the institution of condemnation proceedings (*Danforth* v. *United States,* 308 U.S. 271, 276 [84 L.Ed. 240, 242, 60 S.Ct. 231, 232] or the actual filing of a condemnation action (*People* ex rel. *State Park Com.* v. *Johnson, supra,* 203 Cal.App.2d 712, 723; *People* ex rel. *Dept. of Public Works* v. *Salem Dev. Co., supra,* 216 Cal.App.2d 652, 655) may to some extent interfere with the owner's use and enjoyment of his property and affect its market value, it does not constitute a taking which will accrue interest on the award. The taking or damaging under section 1255b, subdivision (a) (2) of the Code of Civil Procedure must be of a character compensable under article I, section 14, of the Constitution.

The Constitution does not require compensation for every diminution in value of property not taken resulting from the construction of a public improvement. (*Colberg, Inc.* v. *State of California* ex rel. *Dept. of Public Works,* 67 Cal.2d 408, 425-426 [62 Cal.Rptr. 401, 432 P.2d 3]; *People* ex rel. *Dept. of Public Works* v. *Symons,* 54 Cal.2d 855, 858-859 [9 Cal.Rptr. 363, 357 P.2d 451]; *People* v. *Ricciardi, supra,* 23 Cal.2d 390, 395-396; *Eachus* v. *Los Angeles etc. Ry. Co.,* 103 Cal. 614, 617 [37 P. 750, 42 Am.St.Rep. 149]; *Sacramento etc. Drainage Dist.* ex rel. *State Reclamation Board* v. *Reed,* 215 Cal.App.2d 60, 63-64 [29 Cal.Rptr. 847].) With respect to public flood control works, unless there has been a diversion of water from its natural water course, the straightening, widening or deep-

ening of a channel of a natural water course to improve drainage or the collection of surface waters and discharging them into a stream which such waters would reach under natural conditions does not subject the public agency to liability if, as a result of such improvement, the property of a lower owner is damaged by flooding. (*Bauer* v. *County of Ventura,* 45 Cal.2d 276, 282 [289 P.2d 1]; *Archer* v. *City of Los Angeles,* 19 Cal.2d 19 [119 P.2d 1]; *San Gabriel Valley Country Club* v. *County of Los Angeles,* 182 Cal. 392 [188 P. 554, 9 A.L.R. 1200]; *Frustuck* v. *City of Fairfax,* 212 Cal. App.2d 345, 359 [28 Cal.Rptr. 357]; *City of Stockton* v. *Miles & Sons, Inc.* (N.D. Cal. 1958) 165 F.Supp. 554, 559.) It has also been consistently held that vagrant flood waters escaping from a natural water course are deemed to be common enemy against which the owner of land subject to overflow, and hence the state, may protect his land by the erection of protective barriers without incurring liability to lower and adjoining lands by the exclusion of such waters from his own property, even though damage to other lands is occasioned thereby.[5] (*Clement* v. *State Reclamation Board,* 35 Cal.2d 628, 636 [226 P.2d 897]; *San Gabriel Valley Country Club* v. *Los Angeles, supra,* 182 Cal. 392, 400; *Gray* v. *Reclamation Dist. No. 1500,* 174 Cal. 622, 645 [163 P. 1024]; *Lamb* v. *Reclamation Dist. No. 108,* 73 Cal. 125 [14 P. 625, 2 Am.St. Rep. 775]; *City of Stockton* v. *Miles & Sons, Inc., supra,* 165 F.Supp. 554, 562; see *LeBrun* v. *Richards,* 210 Cal. 308, 314 [291 P. 825, 72 A.L.R. 336]; *Horton* v. *Goodenough,* 184 Cal. 451, 457 [194 P. 34]; *Sanguinetti* v. *Pock,* 136 Cal. 466, 472 [69 P. 98, 89 Am.St.Rep. 169]; *Beckley* v. *Reclamation Board, supra,* 205 Cal.App.2d 734, 744-745; *Weck* v. *Los Angeles County Flood Control Dist.,* 80 Cal.App.2d 182, 193 [181 P.2d 935].) The immunity of the public agency has been explained on the theory that if the owner would have no cause of action against a private citizen on the same facts, he can have no claim for compensation against the public agency under article I, section 14, of the Constitution. (*Albers* v. *County of Los Angeles,* 62 Cal.2d 250, 256 [42 Cal.Rptr. 89, 398 P.2d 129]; *Youngblood* v. *Los Angeles County Flood Control Dist., supra,* 56 Cal.2d 603, 608; *Bauer* v. *County of Ventura,*

---

[5] Flood waters have been defined as the extraordinary overflow of rivers and streams which flow vagrantly over adjacent territory. (*Keys* v. *Romley,* 64 Cal.2d 396, 400 [50 Cal.Rptr. 273, 412 P.2d 529]; *Everett* v. *Davis,* 18 Cal.2d 389, 393 [115 P.2d 821]; *Beckley* v. *Reclamation Board,* 205 Cal.App.2d 734, 740 [23 Cal.Rptr. 428].

*supra,* 45 Cal.2d 276, 283.) The concept that a property owner may not recover against a public agency under article I, section 14, if a private individual would not be liable for harm similarly inflicted was critically re-examined and qualified in *Albers* v. *County of Los Angeles, supra,* 62 Cal.2d 250, 263-264. The court nevertheless concluded *"that with the exceptions stated in Gray, supra [Gray* v. *Reclamation District No. 1500, supra,* 174 Cal. 622], *and Archer, supra [Archer* v. *City of Los Angeles,* 19 Cal.2d 19], any actual physical injury to real property proximately caused by the improvement as deliberately designed and constructed is compensable under article I, section 14, of our Constitution whether foreseeable or not."* (Italics supplied.)

In the instant case, under the rules enunciated in *Archer* v. *City of Los Angeles, supra,* and *Gray* v. *Reclamation District No. 1500, supra,* 174 Cal. 622, and the cases following them, the District would incur no liability for physical injury to defendant's land occasioned by the increased flow of water in the San Jacinto River. The levee does not divert waters flowing in Bautista Creek or the San Jacinto River; it protects adjoining lands from vagrant flood waters which would have overflowed their banks.

But the facts of the instant case do not call for the application of the ''common enemy'' doctrine in its fullest rigor.[6]

Defendant's land has suffered no physical injury and there is substantial evidence that none will be suffered even during a design storm of an intensity of once in 166 years. The District engineer testified that the frequency and area of inundation would be substantially the same as in the before condition, and that, while there would be an increase in depth and velocity, there would be no additional erosion or scouring. In addition, there is evidence that during storms of medium intensity, the levee would protect from inundation parts of defendant's lands which would have been flooded in the before condition.

Moreover, there is substantial evidence that the depreciation in market value of defendant's land was attributable, not to the existence of the levee, but to the fact that the imposition

[6]For a criticism of the ''common enemy'' doctrine as applied to public flood control projects, see Comment, *California Flood Control Projects and the Common Enemy Doctrine,* 3 Stanford L.Rev. 361. The author suggests that the issue of liability should be framed in terms of the police power. See also *Beckley* v. *Reclamation Board,* 205 Cal.App.2d 734, 744 [23 Cal.Rptr. 428].)

of the easement with its restrictions against the placement of structures would make the land less attractive to lenders and investors. Plaintiff's appraisers testified that the utility of the land for its highest and best use was unchanged.

There was thus substantial evidence to support the trial court's implied determination that the completion of the levee caused no constitutionally compensable damage to defendant's property. (See *Sacramento, etc. Drainage Dist.* ex rel. *State Reclamation Board* v. *Reed, supra,* 215 Cal.App.2d 60, 68-69; *Frustuck* v. *City of Fairfax, supra,* 212 Cal.App.2d 345, 366-368.)

In an analogous situation the United States Supreme Court in *Danforth* v. *United States, supra,* 308 U.S. 271 [84 L.Ed. 240, 60 S.Ct. 231]; held that just compensation did not require payment of interest on an award from the date of completion of a flood control levee. *Danforth* involved a federal project for the construction of set-back levees approximately 5 miles from an existing levee of the Mississippi River to provide a greater spreading area for flood waters. The project provided for the construction of a "fuse plug" in the existing levee at a point near its connection with the set-back levee so that high flood waters would flow into the floodway between the old levee and the set-back levee. The government condemned a flowage easement over defendant's property which was located between the two levees and near the "fuse plug." The Court of Appeals initially held that interest should have been awarded from the date work on the project commenced (*Danforth* v. *United States,* 102 F.2d 5, 10), but, on rehearing, held that interest was payable only from the date of entry of the judgment (*Danforth* v. *United States,* 105 F.2d 318). The Supreme Court affirmed stating (308 U.S. 271 at pp. 286-287 [84 L.Ed. 240 at pp. 247-248]) : "For completion of the set-back levee to amount to a taking, it must result in an appropriation of the property to the uses of the Government. This levee is substantially complete. The Government has condemned the land upon which the set-back is built. The tract now in litigation lies between the set-back and riverbank levees. The Government could become liable for a taking, in whole or in part, even without direct appropriation, by such construction as would put upon this land a burden, *actually experienced,* of caring for floods greater than it bore prior to the construction. The river-bank levee at the fuse-plug has not been lowered from its previous height. Consequently the land is as well protected from destructive floods

as formerly. *We cannot conclude that the retention of water from unusual floods for a somewhat longer period- or its increase in depth or destructiveness by reason of the set-back levee, has the effect of taking. We agree with the Court of Appeals that this is 'an incidental consequence' of the building of the set-back levee. . . .*'' (Italics added.)

The cases to which defendant has invited our attention are not dispositive of the issue before us. In *Frustuck* v. *City of Fairfax, supra,* 212 Cal.App.2d 345, the trial court found that the city, by approving subdivision maps and drainage plans of upper owners, participated in the diversion of storm and surface waters which would be carried through the enlarged culvert constructed by the city and discharged onto plaintiff's property. In *Clausen* v. *Salt River Valley Water Users' Assn.,* 59 Ariz. 71 [123 P.2d 172]; the Supreme Court of Arizona held that a complaint in inverse condemnation stated a cause of action despite the absence of an allegation that plaintiff's property had suffered physical injury where the complaint alleged that the defendant constructed a spillway in the levee of a canal which would divert waters onto plaintiff's adjacent improved lands which had theretofore never been subject to flooding. (Compare, *Beckley* v. *Reclamation Board, supra,* 205 Cal.App.2d 734.) In the instant case there has been no diversion; defendant's lands had always been subject to inundation. In *Portsmouth Harbor Land & Hotel Co.* v. *United States,* 260 U.S. 327 [67 L.Ed. 287, 43 S.Ct. 135], the court held that a complaint alleging that the government had installed heavy coast defense guns on adjoining land in a position to fire over plaintiff's resort property, had done so and intended to continue to do so in the future, and that the public had been frightened off the premises by the imminence of the guns, alleged facts showing the imposition of a servitude by the government. The facts, if true, were sufficient to show a substantial interference with plaintiff's use and enjoyment of its property. In the case under review, the construction of the levee had no effect on the highest and best use of defendant's land. Although in *United States* v. *Gerlach Live Stock Co.,* 339 U.S. 725 [94 L.Ed. 1231, 70 S.Ct. 955, 20 A.L.R.2d 633], the Supreme Court declined to set aside the determination of the Court of Claims that interest on a condemnation award for the acquisition of riparian rights of a lower owner commenced to run from the date of the first substantial impoundment of water behind the dam

even though no actual deprivation of benefits to the owner had yet occurred, it did so because that was the date the government had administratively fixed as the date of taking for a related purpose. The court declined to express an opinion as to how the issue might have been determined in the absence of the administrative determination. Nor is *Hilltop Properties, Inc.* v. *State of California*, 233 Cal.App.2d 349 [43 Cal.Rptr. 605], cited by defendant, apposite. It involved the question whether the setting aside of a strip of land for street purposes on an informal request from state agents in anticipation of a proposed freeway widening constituted a taking.

Defendant contends that the foregoing cases stand for the proposition that physical invasion of, or injury to, property is not an essential element of a claim for compensable damage under article I, section 14, of the Constitution. While the proposition so stated is undoubtedly true,[7] in the present case there was substantial evidence to support the trial court's determination that the property suffered neither physical injury nor other constitutionally compensable damage by reason of the completion of the levee.

Judgment affirmed.

Kerrigan, Acting P. J., concurred.

---

[7]See Van Allstyne, *Statutory Modification of Inverse Condemnation: The Scope of Legislative Power*, 19 Stanford L.Rev. 727, 760-761.