The **FIRST NATIONAL BANK OF BRUNSWICK**, as Trustee under the Will of Lucy C. Carnegie, Deceased, Appellant,

v.

**UNITED STATES of America**, Appellee.

No. 20650.

United States Court of Appeals Fifth Circuit.

Sept. 14, 1965.

Chris B. Conyers, Conyers, Fendig, Dickey & Harris, Brunswick, Ga., Chas. L. Gowen, King & Spalding, Atlanta, Ga., for appellant.

Ramsey Clark, Asst. Atty. Gen., Roger P. Marquis, George R. Hyde, Attys., Dept. of Justice, Washington, D. C., Donald H. Fraser, U. S. Atty., W. Reeves Lewis, Asst. U. S. Atty., Savannah, Ga., for appellee.

Before TUTTLE, Chief Judge, WISDOM, Circuit Judge, and CARSWELL, District Judge.

CARSWELL, District Judge:

Appellant Trustee challenges the holding of the district court that the loss of use of a creek and wharf, subsequent to the date of taking, may not be included as a compensable item in an original condemnation suit. We think the district court's ruling was correct and, accordingly, affirm.

In January, 1955, the United States commenced condemnation of approximately 492 acres of marsh land on Cumberland Island owned by the First National Bank of Brunswick as Trustee for the Lucy Carnegie Estate. This land was selected under the direction of the Secretary of the Department of the Army for military purposes in connection with the King's Bay Ammunition Loading Terminal Project.

Cumberland Island extends in a North-South direction about fifteen miles along the Georgia coast. The Carnegie holdings on this island consist of 13,051 acres of high land and 4,936 acres of marsh land, and represent approximately nine-tenths of Cumberland Island. Their property is bounded on the north by land owned by the Candlers, east by the Atlantic Ocean, south by Amelia Sound and west by Cumberland Sound. Access to the Carnegie portion of the island was by means of two boat landings, Dungeness Dock located on Cumberland Sound; the other, known as Beach Creek Wharf, is located on Beach Creek, a navigable tidal stream. This stream separates the marsh land, a portion of which is involved in the proceeding, from the high land of the island.

The 492 acre tract is located between Cumberland Sound on the west and the western boundary of Beach Creek on the east and extends up to the headwaters and slightly beyond. It was taken by the Government to provide a place to deposit spoil from Cumberland Sound where a ship channel was being dredged in connection with the establishment and development of a loading terminal. The channel being dredged extended from the ammunition depot on King's Bay down the Cumberland Sound to the Atlantic Ocean. No part of the bed of Beach Creek was included in the taking.

Under motion of appellant a commission was appointed pursuant to Rule 71A(h), Federal Rules of Civil Procedure, to hear and determine the issue of compensation for the taking, including damages to lands not taken, if any. The commission found that the fair market value of the subject tract as of the date of taking was $5,000, a value testified to by one of the appellant's appraisers. Special findings were also made relative to compensation for damages to the lands not taken. The commission found that these damages, which included fishing, hunting and other related rights, amounted to $10,000. This figure was also testified to by one of the appellant's witnesses. The commission also determined compensation by finding that the fair market value of the Carnegie holdings on Cumberland Island immediately before the taking was $4,000,000 and that the value immediately after the taking was $3,985,000. The total compensation due the Carnegie Estate was recommended by the commission to be $15,000. Detailed objections to the commission's report were filed by the appellant. The district court, after having considered each of appellant's contentions and having heard oral arguments by counsel,

confirmed, approved and adopted the findings of fact and conclusions of law of the commission and entered judgment against the United States in the recommended amount of $15,000.

The appellant contends that $15,000 is inadequate compensation because it fails to include any compensation for the loss of the use of Beach Creek Wharf. The navigability of Beach Creek, and hence the use of the Beach Creek Wharf as a boat landing has been greatly diminished because of shoaling action caused by the deposits of spoil dumped on the condemned tract after it was taken by the Government. This has reduced the value of the remaining Carnegie land.

It is the contention of the United States that the alleged damages resulting to Beach Creek and Beach Creek Wharf are not recompensable items in this particular condemnation proceeding. While the Government does not deny that the use of the wharf has been greatly diminished or possibly lost unless some expensive remedial measures are taken, it contends that the asserted damages are recoverable, if at all, under the Tucker Act, 28 U.S.C. § 1346.

■ The main thrust of appellant's argument is based on West Virginia Pulp & Paper Co. v. United States, 4th Cir., 1952, 200 F.2d 100, and United States v. Grizzard, 219 U.S. 180, 31 S.Ct. 162, 55 L.Ed. 165, both of which included as compensable items of damage the deleterious effects on the untaken lands resulting from the use made by the Government of the lands described and taken in condemnation. This Court is in full accord with these cases, but must distinguish the present case in that the use to which the United States intended and announced for the 492 acre tract did not necessarily include, intend or anticipate the resulting shoaling in Beach Creek. Indeed, such a result was not reasonably foreseeable by either party at the time of taking. Had such shoaling been foreseeable as a necessary result, the depositing of spoil could have been placed elsewhere on the tract or, in the alternative, shoaling of Beach Creek could have been prevented by the proper placing of a dike.

■ Had shoaling been found a necessary result of the taking, then this Court could agree that appellant's damage by use concept would be much more persuasive. On the other hand shoaling might never have occurred. Every condemnation action cannot be opened for the inclusion of subsequent damages which may actually result although not plainly demonstrable at the time of taking. There must be a cutoff period in condemnation suits in order for the determination of fair compensation to all parties involved. Damages arising after the date of taking may actually amount to a taking, but Congress has provided other remedial rights for such eventualities.

This Court has in a number of condemnation cases [1] spelled out clearly that the Government can only be made to take that which is described in the declaration of taking. In the present case the Government described its taking of 492 acres with boundaries extending up to but not including Beach Creek. It was only after the date of taking that shoaling began in Beach Creek and even then not as a necessary or anticipated result of such taking.

The Government contends that appellant's property was always subject to a dominant servitude and that appellant did not have a vested right to have this navigable stream remain fixed and unaltered. Be that as it may, we have only to decide if such use damage is part of the fair compensation at the time of taking in a condemnation suit. It is the decision of this Court that such is not the case and any resulting damage from the shoaling of Beach Creek must be sought in a subsequent proceeding separate from the original condemnation suit and to be determined on its merits.

The judgment of the district court is, therefore,

Affirmed.

1. United States v. 452 Acres of Land, more or less, in Santa Rosa County, State of Florida, D.C.Fla., 207 F.Supp. 323 (1962) and United States v. Brondum, 272 F.2d 642 (5th Cir. 1959).