[Civ. No. 33898. Second Dist., Div. Four. Dec. 4, 1969.]

R. E. STAGG, Plaintiff and Respondent, v.
THE MUNICIPAL COURT FOR THE SANTA MONICA JUDICIAL
DISTRICT OF LOS ANGELES COUNTY, Defendant and Respondent;
CITY OF SANTA MONICA, Real Party in Interest and Appellant.

## COUNSEL

Robert C. Cockins, City Attorney, Christina J. New and Richard L. Knickerbocker, Assistant City Attorneys, and Sally G. Disco, Deputy City Attorney, for Real Party in Interest and Appellant.

No appearance for Plaintiff and Respondent.

No appearance for Defendant and Respondent.

## OPINION

**JEFFERSON, Acting P. J.**—On the night of January 2-3, 1968, R. E. Stagg piloted a jet aircraft which took off from Santa Monica Municipal Airport after 11 p.m. and before 7 a.m. the next morning. Santa Monica Municipal Code, section 10105(a) provides: "No pure jet aircraft shall take off from the airport between the hours of 11:00 o'clock p.m. of one day and 7:00 a.m. the next day. The Airport Director or in his absence the watch commander of the Santa Monica Police Department may approve a take off during said hours, provided it appears to his satisfaction that an

emergency involving life or death exists and approval is obtained before take off."

On January 3, at the request of the airport director, a complaint was filed against Stagg by the City of Santa Monica in the local municipal court, charging him with violation of ordinance 10105(a). Following the entry of a not guilty plea and the setting of the matter for trial, Stagg made a motion to dismiss which was denied. On May 10 Stagg filed a petition for a writ of prohibition in the superior court seeking to restrain the municipal court from proceeding with the trial. The ground urged (the same ground supporting the motion to dismiss) was that the ordinance was an unconstitutional attempt to regulate a field preempted by both federal and state law.

On June 6 the superior court issued its memorandum and order granting the writ of prohibition. The court concluded that the ordinance was invalid because its subject matter was preempted by state law. The court found it unnecessary to decide whether there was a federal preemption. On June 13 the judgment granting the peremptory writ was entered. From this judgment the City of Santa Monica appeals. ▮ As will be observed from the following discussion, we have concluded that, as applied to the facts presented, the ordinance is valid.

No dispute exists that the purpose of the ordinance is to alleviate the problem of noise during late night hours caused by the take off from the airport of jet aircraft.

Preliminarily, it must be recognized that the doctrine of federal preemption has no application here. In *Loma Portal Civic Club* v. *American Airlines, Inc.,* 61 Cal.2d 582 [39 Cal.Rptr. 708, 394 P.2d 548], the court concluded that state action (and impliedly that of a political subdivision thereof) has not been precluded by any extensive pattern of federal regulation in the field of air transportation. The court stated (at pp. 591-592): "A holding of federal preemption would have the effect of disabling the state from any action in the entire field, and placing in the federal government complete and sole responsibility for regulation of all aspects of that field. Such a holding by a single state court would have, of course, no effect on the conduct of other states with respect to regulation of that field, and unless Congress had in fact intended such preclusion of state regulation and were to carry out its responsibilities, there would result within that state a lacuna which the state would be powerless to fill. . . . To be sure, the supremacy clause precludes the enforcement of state law which conflicts with federal law . . . and it is for this reason, not preemption, that a state may not prohibit that which federal authority directs."

Concerning state regulations aimed at noise abatement, the court in

*Loma Portal* observed (at p. 592): "Moreover, we note that noise abatement is a federal as well as a state aim, and when not inconsistent with safety . . . would not necessarily present a conflict with federal law but might well reinforce it."

Our research has disclosed no federal or California enactment which directly conflicts with the ordinance in question. Both the federal government and the State of California have regulations governing the "flight" of aircraft. The United States by virtue of its sovereignty over navigable airspace has the paramount power to regulate air traffic. Federal statutes, after defining navigable airspace as the airspace above the minimum altitudes of flight prescribed by the Administrator of the Federal Aviation Agency, plus the airspace needed to insure safety in take off and landing of aircraft, authorize the administrator to regulate the use of navigable airspace and to establish rules governing the flight, navigation, protection and identification of aircraft. (49 U.S.C. §§ 1301(24), 1348(a) and (c).)

The California Legislature has provided in Public Utilities Code, section 21403 that: "(a) Flight in aircraft over the land and waters of this State is lawful, unless at altitudes below those prescribed by federal authority, or unless so conducted as to be imminently dangerous to persons or property lawfully on the land or water beneath. . . .

". . . . . . . . . . . . . . . . . . .

"(c) The right of flight in aircraft includes the right of safe access to public airports, which includes the right of flight within the zone of approach of any public airport without restriction or hazard. . . ."

While the latter statute specifically states that the right of flight includes the right of safe access to public airports—*i.e.,* the right of flight within the zone of approach and the right to land, nothing is said about take off or departure from public airports. The statute thus expresses a policy that the right of flight shall not be abridged. This is not to say that reasonable regulations by a municipality as to time, manner and place of take off from its airport are precluded because they may incidentally affect, although they do not impair, the right of flight.

The superior court determined that the City of Santa Monica had no authority to pass the ordinance because the state had reserved for itself the power to regulate all aspects of the air transportation field not reserved by the federal government. The memorandum filed by the court cites the "State Aeronautics Act" [Pub. Util. Code, §§ 21001-21694] and in particular section 21403 (quoted above) as indicating a legislative intent to preempt the field. However, as we have already pointed out, the statute

speaks only in terms of the "right of flight" which it defines to mean the right of safe access to public airports. We find no prohibition in the language of section 21403, or for that matter in any other section of the State Aeronautics Act, which would preclude local regulation of the type involved here.

The airport is owned by the city. ■ A municipally owned airport is classed as a public utility. (*City & County of San Francisco* v. *Western Air Lines, Inc.,* 204 Cal.App.2d 105, 130 [22 Cal.Rptr. 216].) It is not, however, subject to the jurisdiction of the Public Utilities Commission. (*City of Pasadena* v. *Railroad Com.,* 183 Cal. 526 [192 P. 25, 10 A.L.R. 1425].) ■ A charter city has plenary powers with respect to municipal affairs not expressly forbidden to it by the state or the terms of its charter. (*City of Santa Monica* v. *Grubb,* 245 Cal.App.2d 718, 723-724 [54 Cal.Rptr. 210].) ■ "[B]y express statement in its charter, Santa Monica possesses the broad general home rule power with respect to municipal affairs." (*City of Santa Monica* v. *Grubb, supra,* at p. 723.) ■ The regulation of municipally owned public utilities is generally considered to be a municipal affair. (*Mullins* v. *Henderson,* 75 Cal.App.2d 117, 129 [170 P.2d 118]; *Los Angeles Gas & Elec. Corp.* v. *Los Angeles,* 188 Cal. 307 [205 P. 125].)

Indeed, some aspects of the operation of public utilities are matters of statewide concern. (*Wilkes* v. *City etc. of San Francisco,* 44 Cal.App.2d 393 [112 P.2d 759].) This goes for airport operations. (*Trans World Airlines, Inc.* v. *City & County of San Francisco,* 228 F.2d 473.) The *Trans World Airlines* case involved the question of whether the municipality could change its rates for the use of its facilities by the airline in violation of its contract with the airline. The court held that the ability of the city to contract and to be bound thereby was a matter of statewide concern; that having chosen to proceed by contract, the city in effect suspended during the life of the contract its governmental power to fix or regulate rates. However, contrary to the conclusion of the court below, we do not regard the question of the hours during which municipal airport facilities are to be made available for jet plane take offs, to be of statewide concern.

■ In any event, whether or not the operation of a municipally owned airport is a matter of statewide concern, such operation has been expressly committed by statute to the local agency. Government Code, section 50470 provides that a municipality may acquire property for use as an airport. Section 50474 then provides: "In connection with the erection or maintenance of such airports or facilities, a local agency may:

. . . . . . . . . . . . . . . . . . .

"(f)   Regulate the use of the airport and facilities and other property or means of transportation within or over the airport.

"(g)   Perform any duties necessary or convenient for the regulation of air traffic.

"(h)   Enter into contracts or otherwise cooperate with the Federal Government or other public or private agencies.

"(i)   Exercise powers necessary or convenient in the promotion of aeronautics and commerce and navigation by air."

The subject matter of the Santa Monica ordinance clearly comes under the cities' power to "regulate the use of the airport."

The ordinance may also be upheld as a valid exercise of the municipality's police power. Article XI, section 11 of the California Constitution empowers cities and counties to make and enforce "such local, police, sanitary, and other regulations as are not in conflict with general laws." As above pointed out, there is no specific state legislation on the subject of noise abatement; the ordinance does not conflict with existing legislation in the general field of aviation; there has been no express declaration of legislative intent which would preclude local regulations in the field, or any general plan or scheme which is so comprehensive that an intent to occupy the field may be implied. (See *Tolman* v. *Underhill,* 39 Cal.2d 708, 712 [249 P.2d 280].)

The judgment is reversed.

Kingsley, J., and Dunn, J., concurred.