[Civ. No. 27027. First Dist., Div. One. Dec. 1, 1970.]

CITY OF OAKLAND, Plaintiff and Appellant, v.
MELVYN C. NUTTER et al., Defendants and Respondents.

754

## Counsel

J. Kerwin Rooney, John Nolan, Breed, Robinson & Stewart and Ned Robinson for Plaintiff and Appellant.

Rogers, Vizzard & Tallett and John D. Rogers for Defendants and Respondents.

## Opinion

**SIMS, J.**—The City of Oakland, acting by and through its board of port commissioners, as condemner, has appealed from judgments rendered in favor of landowners in 17 actions which were consolidated for trial. The actions were brought to "acquire an air easement in the air space above the surface of the hereinafter described real property for a public use, to wit, for airport purposes, in order to protect the approaches of said Airport from the encroachment of structures or vegetable life of such height or character as to interfere with or be hazardous to the use of said Airport, . . ." (See Code Civ. Proc., § 1239.2.[1]) The real property over which the easement was sought is referred to as "the Runway 9R clear zone area" and may be described as an area roughly 500 feet wide by

[1]Code of Civil Procedure section 1239.2 provides: "Airspace above the surface of property or an air easement in such airspace may be acquired under this title by a county, city or airport district if such taking is necessary to protect the approaches of any airport from the encroachment of structures or vegetable life of such height or character as to interfere with or be hazardous to the use of such airport." (Added Stats. 1945, ch. 1242, § 1, p. 2354.)

2,000 feet long running westerly and centered on a projection of the center line of a runway 9R, which is indicated as terminating 200 feet easterly of the clear zone area. The easement sought embraces all of the airspace above the "9R Clear Zone Surface," which is depicted as a plane overlying the clear zone area rising from zero to 50 feet at its westerly extremity.

The city contends that the trial court improperly permitted, in connection with the evidence of damages for the taking of the air easement, consideration of such excessive noise, vibration, discomfort, inconvenience and other interference with the use of the property remaining to the landowners as was engendered by the use of the easement acquired. Its argument is two-pronged. First, the city asserts that the foregoing elements, if compensable, are a burden or charge on the servient estate separate and apart from a mere clearance easement which restricts the use of the property above a specified height; and that as such a separate burden, those elements were without the scope of the statute under which the city acted, were not contemplated by the ordinance of intention under which the city, through its port authority, proceeded, and were not within the issues framed by its complaint. Secondly, it insists that the elements in question are not compensable in any event. ■ These contentions are examined and it is concluded that the trial court properly allowed consideration of noise and the other elements in determining the overall damages, including severance, which resulted from the condemnation of the air easement. ■ Nevertheless, because the court erroneously referred to the provisions of section 1239.3 (see fn. 5 below) in the conclusions of law and the judgments, the case must be remanded for correction of those documents.

### Procedural Background

On November 6, 1967 the board of port commissioners passed an ordinance finding and determining that the public interest and necessity required the acquisition of air easements which were described in the same manner as has been quoted above from the complaints filed in the pending action. The complaints specifically point out: "That said *air easement* hereby sought shall *include* the continuing right to clear and keep clear the above described real property of any and all obstructions. . . . "[2] (Italics added.)

---

[2]The complete language reads: "That said air easement hereby sought shall include the continuing right to clear and keep clear the above described real property of any and all obstructions infringing upon or extending into or above the Runway 9R clear

The complaints also allege, "That the parcel of land described . . . over which said easement is sought to be condemned is and includes an entire parcel of land."[3] By their answers the defendants alleged not only that they were the respective owners of the real property embracing the easements sought to be acquired and described in the complaint, but also of the entire larger parcel of real property of which the easements were a part.[4] Each defendant sought not only "the fair market value of the easement sought to be condemned," but also "severance damages occasioned to the remainder by reason of the use of said air easement for airport purposes."

The pretrial conference order listed among the legal issues to be determined by the trial court prior to submitting the case to a jury, the following: ". . . 3. The nature and extent of the easement being acquired. [¶] 4. Whether or not C.C.P. Sections 1239.2, 1239.3, and 1239.4 are

---

zone approach surface of said Runway 9R clear zone area, . . . and for said purpose to take action necessary to prevent the erection or growth of any building, structure, tree, vegetable life or other object into the air space above that portion of said Runway 9R clear zone approach surface which is directly over said real property, and to remove from such air space, or at the sole option of the plaintiff, as an alternative, to mark and light as obstructions to air navigation any and all buildings, structures, trees, vegetable life or other objects that may at any time project or extend above said Runway 9R clear zone approach surface."

This language appears to be phrased to comply with federal regulations governing allocations to local airports. (See 14 C.F.R. § 151.9, fn. 8 below.)

[3]Code of Civil Procedure section 1244 requires in pertinent part: "The complaint must contain: . . . 5. A description of each piece of land, or other property or interest in or to property, sought to be taken, and whether the same includes the whole or only a part of an entire parcel or tract or piece of property, or interest in or to property, but the nature or extent of the interests of the defendants in such land need not be set forth. . . ."

[4]It was also specifically alleged, "That the air easement sought to be acquired for the landing and taking off of aircraft in connection with the operation of terminals, hangars, flying field, signal lights, and other operations, as alleged in paragraph II of plaintiff's complaint, is a part of a larger parcel of property owned by defendants. . . .

"That said defendants further allege that the value of the air easement being taken for airport purposes, including the landing and taking off of aircraft in connection with the operation of the flying field, terminal, hangars, and other uses alleged in said complaint has not at this time been determined with accuracy, and that the severance damages accruing to the remainder of the property, of which said easement is a part, by reason of the use of said air easement and the operations of plaintiff and use of said air space as described in the complaint for the alleged public uses and purposes therein enumerated, have not as yet been determined with particularity, and that defendants shall request leave of the court to amend their answer by inserting said amounts when the same have been ascertained."

applicable."[5] The factual issues included the following: "1. Fair market value. [¶] 2. Severance damages, if any."[6]

When the case was called for trial the trial judge after hearing argument on the legal issues ruled as follows: ". . . I hold that the nature and extent of the easement acquired is the actual air easement sought and described in each of the actions, together with any severance damages that may be caused due to the interference and inconvenience, if any, that the remainder of the property suffers by reason of the take and by reason of the use to which the take is put." He further indicated, "That Code of Civil Procedure sections 1239.2 and 1239.3 are both applicable." In accordance with the court's ruling, testimony was received concerning the nature and effect of the present and prospective use of the air easement for take-offs and landings, and the diminution in the value of the landowners' properties by reason of such use.

At the outset of the trial the jury were instructed to determine the fair market value of the property taken—the easement—and the severance damages. Similar instructions were given before the case was submitted to the jury for decision. At that time the court also read the jurors the provisions of sections 1239.2 and 1239.3 of the Code of Civil Procedure (see fns. 1 and 5 above). The jury was further instructed, "An owner whose

[5]Code of Civil Procedure section 1239.2 is set forth in footnote 1 above.

Section 1239.3 provides: "Airspace above the surface of property or an air easement in such airspace may be acquired under this title by a county, city, port district, or airport district if such taking is necessary to provide an area in which excessive noise, vibration, discomfort, inconvenience or interference with the use and enjoyment of real property located adjacent to or in the vicinity of an airport and any reduction in the market value of real property by reason thereof will occur through the operation of aircraft to and from the airport." (Added by Stats. 1965, ch. 1564, § 1, p. 3653.)

Section 1239.4 (added Stats. 1945, ch. 1242, § 2, p. 2354, and amended Stats. 1961, ch. 965, § 1, p. 2606) prescribes for the acquisition of land adjacent to or in the vicinity of an airport in fee, with or without the reservation to the former owner of a license for limited use and occupancy. It is not applicable to these cases.

[6]Code of Civil Procedure section 1248 provided and provides in pertinent part: "The court, jury, or referee must hear such legal testimony as may be offered by any of the parties to the proceeding, and thereupon must ascertain and assess: [¶] 1. The value of the property sought to be condemned. and all improvements thereon pertaining to the realty, and of each and every separate estate or interest therein; if it consists of different parcels, the value of each parcel and each estate or interest therein shall be separately assessed; [¶] 2. If the property sought to be condemned constitutes only a part of a larger parcel, the damages which will accrue to the portion not sought to be condemned, by reason of its severance from the portion sought to be condemned, and the construction of the improvement in the manner proposed by the plaintiff; . . . [¶] 7. As far as practicable, compensation must be assessed for each source of damages separately."

It was agreed that there were no special benefits to the properties involved. (Cf. § 1248, subd. 3.)

land is being condemned in part may not recover damages in the condemnation action to the remainder of his land caused by the manner in which the facility is to be operated on the lands of others. The detriment for which he may recover compensation is that which will result from the operation of the facility on his land alone."

## I

The extent of a landowner's interest in the airspace over his land and the extent to which he is entitled to be compensated for the use of that airspace for overflights, including take-offs and landings, has been the subject of considerable litigation and legislation.[7] For the purposes of this case it may be assumed as established by federal[8] and state law[9] that there is a public right of freedom of transit through the navigable airspace of the United States.

---

[7] The general principles and pertinent precedents are collected in the following commentaries, among others: Van Alstyne, *Intangible Detriment* (1968) 16 U.C.L.A. L.Rev. 491; Part III, 491, Noise Damage from the Operation of Aircraft, pp. 523-543; Alekshun, *Aircraft Noise Law: A Technical Perspective* (1969) 55 A.B.A. J. 740, 740-741; Baxter, *op. cit.,* fn. 6 above, 21 Stan. L.Rev. 1, 47-53; Seago, *The Airport Noise Problem and Airport Zoning* (1968) 28 Md. L.Rev. 120, 120-124; Bohannon, *Airport Easements* (1968) 54 Va. L.Rev. 355, 355-363; Sackman, *Air Rights—A Developing Prospect* (1968) Ninth Institute on Eminent Domain, Southwestern Legal Foundation, p. 1; Note, *Airplane Noise* (1965) 65 Colum. L.Rev. 1428; Note, *Airplane Noise* (1961) 74 Harv. L.Rev. 1581; Harvey, *Landowners' Rights in the Air Age* (1958) 56 Mich. L.Rev. 1313; Nichols, Eminent Domain (rev. 3d ed. 1963) § 5.781, pp. 204-218; and 1 Rest.2d Torts § 159, subd. (2) and coms. g-m pp. 282, 284. The annual report, December 1969, Cal. Law Revision Com. (p. 93), indicates that the subject of liability in inverse condemnation for aircraft noise damage is under active study.

[8] The federal law provides: "There is recognized and declared to exist in behalf of any citizen of the United States a public right of freedom of transit through the navigable airspace of the United States." (49 U.S.C. § 1304.) " 'Navigable airspace' means airspace above the minimum altitudes of flight prescribed by regulations issued under this chapter, and shall include airspace needed to insure safety in take-off and landing of aircraft." (49 U.S.C. § 1301, subd. (24). See also, Regulations of the Federal Aviation Administration, Department of Transportation, subchapter A ["Definitions"], part 1 ["Definitions and abbreviations"], § 1.1; C.F.R. tit. 14, ch. 1, § 1.1.)

The regulations issued under the law governing the federal aviation program (see 49 U.S.C. § 1324, subd. (a), § 1348, subd. (c), and § 1354, subd. (a)) now provide in part, "Except when necessary for take-off or landing, no person 'may operate an aircraft below the following altitudes: . . . (b) *Over congested areas* . . . 1,000 feet . . . (c) *Over other than congested areas* . . . 500 feet. . . .'" (Regulations of the Federal Aviation Administration, Department of Transportation, subchapter F ["Air Traffic and General Operation Rules"], part 91 ["General Operating and Flight Rules"] § 91.79 ["Minimum safe altitudes, general"]; 14 C.F.R. ch. I, § 91.79 [formerly § 60.17].)

The same regulations define a "clearway" as an ascending plane from the end of runway "above which no object or any terrain protrudes." (*Id.,* § 1.1.) In subchapter

[9] See next page for footnote.

It is unnecessary to determine in this case whether that right is absolute over designated altitudes and may be enjoyed without compensation to the owner of the underlying land regardless of the circumstances attending the enjoyment of that right.[10] It has been determined that compensation must be made to the subjacent landowner[11] when the use of the airspace over his land for take-offs or landings or both "are so low and so frequent as to be a direct and immediate interference with the enjoyment and use

E, dealing with "Airspace," part C sets up "Obstruction Standards." Section 77.27 establishes "Civil Airport imaginary surfaces related to runways." Subdivisions (b) and (c) establish an "approach surface" for instrument and noninstrument landing system runways respectively. The former refers to "a slope of 50 to 1 for a horizontal distance of 10,000 feet," and "a slope of 40 to 1 for an additional 40,000 feet." In subchapter I, dealing with "Airports," the part dealing with "Federal Aid to Airports" sets up "General Requirements" for federal aid. Included in these requirements is a provision for "Runway Clear Zones" which are defined as that portion of the "area at ground level which . . . [extends to a point] . . . directly below each approach surface slope . . . where the slope reaches a height of 50 feet above the elevation of the runway or 50 feet above the terrain at the outer extremity of the clear zone, whichever distance is shorter." It is required that the airport owner or operator have "an easement (or a covenant running with the land) giving it enough control to rid the clear zone of all obstructions . . . and to prevent the creation of future obstructions; . . ." (*Id.*, § 151.9.)

[9]The California Public Utilities Code provides as follows:
Section 21401. "Sovereignty in the space above the land and waters of this state rests in the state, except where granted to and assumed by the United States pursuant to a constitutional grant from the people of the state. [¶] The operation of aircraft in such space is a privilege subject to the laws of this state."
Section 21402. "The ownership of the space above the land and waters of this State is vested in the several owners of the surface beneath, subject to the right of flight described in Section 21403. No use shall be made of such airspace which would interfere with such right of flight; provided, that any use of property in conformity with an original zone of approach of an airport shall not be rendered unlawful by reason of a change in such zone of approach."
Section 21403 provides in part as follows: "(a) Flight in aircraft over the land and waters of this state is lawful, unless at altitudes below those prescribed by federal authority, or unless so conducted as to be imminently dangerous to persons or property lawfully on the land or water beneath. . . . (c) The right of flight in aircraft includes the right of safe access to public airports, which includes the right of flight within the zone of approach of any public airport without restriction or hazard. The zone of approach of an airport shall conform to the specifications of Part 77 of the Federal Aviation Regulations of the Federal Aviation Administration, Department of Transportation." The text of section 21402, and that of subdivision (c) of section 21403, as it read prior to a 1968 amendment which changed the designation of the citation of the applicable federal regulation, were read to the jury.

[10]It appears that the overflights in this case are between the lower limit of the general navigable airspace, and the upper limit of the usable airspace left to the property owners after the taking of the airspace easement. (Cf. Baxter, *The SST: From Watts to Harlem in Two Hours* (1968) 21 Stan. L.Rev. 1, 38-57.)

[11]All of the properties involved are subjacent to the airspace easement sought. They are also all subject to overflights. Therefore, there is no need to determine whether there can be a taking of land by consequential damages suffered without an overflight. (Cf. *Johnson* v. *City of Greeneville* (1968) 222 Tenn. 260 [435 S.W.2d 476], *City*

of the land," which in turn results in diminution in the value of the property. (*United States* v. *Causby* (1946) 328 U.S. 256, 266-267 [90 L.Ed. 1206, 1213-1214, 66 S.Ct. 1062]. See also, *Griggs* v. *Allegheny County* (1962) 369 U.S. 84, 88-89 [7 L.Ed.2d 585, 588-589, 82 S.Ct. 531]; *Loma Portal Civic Club* v. *American Airlines, Inc.* (1964) 61 Cal.2d 582, 594 [39 Cal. Rptr. 708, 394 P.2d 548]; and *Sneed* v. *County of Riverside* (1963) 218 Cal.App.2d 205, 209-212 [32 Cal.Rptr. 318].)[12]

A distinction has been recognized between an "avigation" or "flight" easement and a "clearance" or "obstruction" easement. (See, *United States* v. *Brondum* (5th Cir. 1959) 272 F.2d 642, 644-645; *United States* v. *64.88 Acres of Land* (3d Cir. 1957) 244 F.2d 534, 535-536; *Western* v. *McGehee* (D.Md. 1962) 202 F.Supp. 287, 289-290; *United States* v. *4.43 Acres of Land* (N.D.Tex. 1956) 137 F.Supp. 567, 572, distinguished in 379 U.S. 487, 492, fn. 2 [13 L.Ed.2d 439, 443, 85 S.Ct. 493]; *City of Charlotte* v. *Spratt* (1965) 263 N.C. 656, 662 [140 S.E.2d 341, 346]; and *City of Jacksonville* v. *Schumann* (Fla.App. 1964) 167 So.2d 95, 98, cert. den. (Fla. 1965) 172 So.2d 597.[13]

With this background examination can proceed of the city's contention

---

*of Jacksonville* v. *Schumann* (Fla.App. 1964) 167 So.2d 95, cert. den. (Fla. 1965) 172 So.2d 597, followed on merits in *City of Jacksonville* v. *Schumann* (Fla.App. 1967) 199 So.2d 727, 729, cert. den. (1968) 390 U.S. 981 [19 L.Ed.2d 1278, 88 S.Ct. 1101]; *Martin* v. *Port of Seattle* (1964) 64 Wn.2d 309 [391 P.2d 540] (cert. den. 379 U.S. 989 [13 L.Ed.2d 610, 85 S.Ct. 701]); and *Thornburg* v. *Port of Portland* (1962) 233 Ore. 178 [376 P.2d 100], with *Ferguson* v. *City of Keene* (1968) 108 N.H. 409 [238 A.2d 1]; *Louisville & Jefferson County Air Bd.* v. *Porter* (Ky. 1965) 397 S.W.2d 146; and *Batten* v. *United States* (10th Cir. 1962) 306 F.2d 580, cert. den. (1962) 371 U.S. 955 [9 L.Ed.2d 502, 83 S.Ct. 506], reh. den. 372 U.S. 925 [9 L.Ed. 2d 731, 83 S.Ct. 718].) See also, Spater, *Noise and the Law* (1965) 63 Mich.L.Rev. 1373, and commentaries listed fn. 7 above, passim.

[12]The addition and incorporation in the federal definition of "navigable airspace" (see 49 U.S.C. § 1301, subd. 24) of the phrase "and shall include airspace needed to insure safety in take-off and landing of aircraft" did not create a right to use such airspace without compensation. (See, *Griggs* v. *Allegheny County* (1962) 369 U.S. 84, 88-89 [7 L.Ed.2d 585, 588-589, 82 S.Ct. 531]. See, Note, *op. cit.*, fn. 7, above, 74 Harv. L.Rev. 1581, 1593-1596; Comment, *Air Law—the Federal Aviation Act of 1958* (1959) 57 Mich.L.Rev. 1214, 1225-1226.)

[13]In *United States* v. *Brondum* (5th Cir. 1959) 272 F.2d 642, the court observed with respect to the latter, ". . . the right to cut trees and natural growth to a prescribed height and to remove man-made obstructions above a prescribed height . . . is sometimes referred to as a 'flight obstruction easement.' Graphically and accurately, Judge Estes describes the easement as a 'ceiling.' The purpose of the ceiling is to increase the margin of safety for flying by assuring that the glide zone will be free from natural growth or man-made obstructions and the pilot's vision unobscured above a designated altitude. [¶] A navigation easement may or may not contain provisions dealing with obstructions, but, unlike a clearance easement, in express terms

that the trial court erred in ruling and in instructing the jury that the city was taking more than a clearance easement, and in permitting evidence of the effect of flights through the overlying airspace on the value of the landowners' properties. (Cf. *United States* v. *Brondum, supra,* 272 F.2d 642, 643, fn. 1.) ■ It may have been technically incorrect to rule and to instruct that the city was acquiring an easement under the provisions of section 1239.3 of the Code of Civil Procedure, in the absence of reference to that section in the ordinance of intention or in the complaint. Nevertheless, under applicable rules governing severance damages the landowners were entitled to recover for the diminution in the value of their remaining properties from the use of the airspace condemned—the area between the runway 9R clear zone approach surface and the ordinary navigable airspace—by overflights taking off from and approaching the airport.

■ "The necessity for appropriating private property for public use is not a judicial question. This power resides in the legislature, and may either be exercised by the legislature or delegated by it to public officers." (*Rindge Co.* v. *Los Angeles* (1923) 262 U.S. 700, 709 [67 L.Ed. 1186, 1193, 43 S.Ct. 689]. See also, *People* v. *Chevalier* (1959) 52 Cal.2d 299, 304-305 [340 P.2d 598]; and Code Civ. Proc., § 1241, subd. 2.)

It is generally recognized that the foregoing principle precludes a court from compelling a public body to condemn property. In *United States* v. *Brondum, supra,* the court stated, "The United States Government has complete discretion in determining whether to take a clearance easement or to take an avigation easement, . . . The district court lacked jurisdiction to compel the United States to take an avigation easement." (272 F.2d at p. 646. See also, *First National Bank of Brunswick* v. *United States* (5 Cir. 1965) 350 F.2d 606, 608; *2,953.15 Acres of Land, etc.* v. *United States* (5th Cir. 1965) 350 F.2d 356, 360, fn. 7; *United States* v. *452.13 Acres of Land, etc.* (N.D.Fla. 1962) 207 F.Supp. 323, 324; and *City of Charlotte* v. *Spratt, supra,* 263 N.C. 656, 662 [140 S.E.2d 341, 346-347].) ■ From the foregoing it may be concluded that the trial court erred in determining that the provisions of section 1239.3 were applicable to the case, and in reading those provisions to the jury. It does not necessarily follow, however, that the court erred in also ruling and in instructing the jury that the defendants were entitled to severance damages, and that the interference and inconvenience suffered by the remainder of the property by reason of the use of the airspace taken should be considered

it permits free flights over the land in question. It provides not just for flights in the air as a public highway—in that sense no easement would be necessary; it provides for flights that may be so low and so frequent as to amount to a taking of the property." (272 F.2d at pp. 644-645, fns. omitted.)

in connection with those damages. The latter rulings being correct, there was no prejudice, in the sense of a miscarriage of justice (see Cal.Const., art. VI, § 13) by reason of the former errors.

The California Constitution provides, "Private property shall not be taken or damaged for public use without just compensation . . . ." (Art. I, § 14; and see, *Eachus* v. *Los Angeles etc. Ry. Co.* (1894) 103 Cal. 614, 616 [37 P. 750].) The Code of Civil Procedure (§ 1248, fn. 6 above) expressly provides for a determination of "the damages which will accrue to the portion not sought to be condemned, by reason of . . . the construction of the improvement in the manner proposed by the plaintiff. . . ." In *People* ex rel. *Dept. Pub. Wks.* v. *Silveira* (1965) 236 Cal. App.2d 604 [46 Cal.Rptr. 260], this court stated, "A condemnation award must once and for all fix the damages, present and prospective, that will accrue reasonably from the construction of the improvement and in this connection must consider the most injurious use of the property reasonably possible. [Citation.]" (236 Cal.App.2d at pp. 621-622. See also, *McDougald* v. *Southern Pacific R. R. Co.* (1912) 162 Cal. 1, 3 [120 P. 766]; and *People* ex rel. *Dept. Pub. Wks.* v. *Lundy* (1965) 238 Cal. App.2d 354, 361-362 [47 Cal.Rptr. 694].)

In this case the city, although ostensibly proceeding under the terms of section 1239.2 of the Code of Civil Procedure (see fn. 1 above), did not limit the proposed easement to a clearance or obstruction easement. The language of the complaint refers to "an air easement . . . for airport purposes . . . to protect the approaches of said Airport." The easement is not limited to the "right to clear and keep clear the above described real property of any and all obstructions." Such a right is merely designated as being included in what may be deemed to be a broader easement. For all practical purposes the city was seeking to exclude the landowners from any enjoyment of the airspace lying over the runway 9R clear zone approach surface and below the navigable public domain. (See, *Hillsborough County Aviation Authority* v. *Benitez* (Fla.App. 1967) 200 So.2d 194, 199.) ▉ In alleging that the air easement was for airport purposes and that such purposes included the landing and taking off of aircraft, the city included rather than excluded such use of the airspace involved. It brought itself within the broad provisions of subdivision 20 of section 1238 of the Code of Civil Procedure. The landowners by their answers specifically adverted to the use of the airspace in question for the landing and taking off of aircraft. The evidence demonstrated that such use existed in fact. Within principles discussed below (part II), the landowners were entitled to show the use to be made of the property taken, and the effect of such use on the fair market value of the property remaining to them. (See, *Pierpont*

*Inn, Inc.* v. *State of California* (1969) 70 Cal.2d 282, 294-295 [74 Cal. Rptr. 521, 449 P.2d 737]; *People* v. *Symons* (1960) 54 Cal.2d 855, 859-860 [9 Cal.Rptr. 363, 357 P.2d 451]; *City of Pleasant Hill* v. *First Baptist Church* (1969) 1 Cal.App.3d 384, 435 [82 Cal.Rptr. 1]; *Pacific Gas & Elec. Co.* v. *Hufford* (1957) 49 Cal.2d 545, 553-554 [319 P.2d 1033]; *San Bernardino County Flood Control Dist.* v. *Sweet* (1967) 255 Cal.App.2d 889, 904 [63 Cal.Rptr. 640]; *County of Santa Clara* v. *Curtner* (1966) 245 Cal.App.2d 730, 743 [54 Cal.Rptr. 257]; *People* ex rel. *Dept. Pub. Wks.* v. *Silveira, supra,* 236 Cal.App.2d 604, 617; and *People* v. *O'Connor* (1939) 31 Cal.App.2d 157, 159 [87 P.2d 702].)

A comparison of section 1239.2 (fn. 1 above) with section 1239.3 (fn. 5 above) of the Code of Civil Procedure does not require a contrary conclusion. The former section was adopted in 1945. It may be assumed that the ordinary rules governing the assessment of damages in eminent domain applied, particularly those referred to above in connection with severance damages. ■ The addition of section 1239.3 in 1965 was not a restriction on, or an attempt to segregate and carve out a portion of the power conferred by section 1239.2, nor can it be construed as an attempt to segregate the damages which otherwise could be recovered in an action brought under subdivision 20 of section 1238 or under section 1239.2. (See, *United States* v. *Smith* (5th Cir. 1962) 307 F.2d 49, 58.) ■ Section 1239.3 purports to enlarge the powers of condemnation beyond property physically used for an airport (§ 1238, subd. 20; and see, *City of Fresno* v. *Hedstrom* (1951) 103 Cal.App.2d 453, 456 [229 P.2d 809]), and beyond airspace necessary to protect the approaches to an airport (which by definition implies airspace overlying property which is subject to overflights by planes landing or taking off) to airspace overlying any "real property located adjacent to or in the vicinity of an airport." ■ Manifestly this section was adopted to permit appropriate governmental bodies to take the initiative in securing rights which might otherwise be the subject of actions for inverse condemnation under the principle that interference with the use and enjoyment of such property by excessive noise, vibration, discomfort, and inconvenience through the operation of aircraft to and from an airport may be compensable even where the property involved is not subject to direct overflights. (See, Van Alstyne, *op. cit.,* fn. 7, 16 U.C.L.A. L.Rev. 491, 528-535, particularly p. 532, fn. 165 and p. 536, fn. 185; and cases collected fn. 11 above.) The adoption of section 1239.3 does not indicate that the factors set forth therein are not to be considered in an action to condemn under the earlier adopted sections, either before or after 1965.

Nor is the principle enunciated in *United States* v. *Brondum, supra,* controlling in this case. In that case the court specifically pointed out, "There is no mention of the right to fly over the land [in the description of the easement]" (272 F.2d at p. 644), and, more specifically, "The physical location of the Brondums' property is such that the Government would have no need for an avigation easement. The property is located 735 feet opposite the midway point of the runway. There is no reason for planes to fly over the Brondums' land, unless an emergency should make such a flight unavoidable. Further, planes may never fly at such low altitudes as to interfere with the use of the property." (*Id.,* p. 645.) In this case, on the other hand, the description of the air easement sought is broad enough to include all the operations of the airport, and the evidence shows that use of the airspace for take-offs and landings was not only contemplated but actually effected. In *United States* v. *Smith, supra,* the majority rejected the contention advanced by the dissenting judge (307 F.2d 49, 60) that *Brondum* could be applied to prevent the landowner from showing that the value of his remaining property was depreciated by the flooding of an access road which was purportedly the subject of other proceedings to which the landowner was not a party. The majority stated, "By adopting the expedient of separating the two claims of separate interests in the same land into two separate civil actions, the appellant could not change the essential character of what was being done and could not destroy appellee's claim to full and just compensation." (*Id.,* at p. 58.) A concurring opinion expressly distinguishes *Brondum* on the same grounds that have been set forth above (*id.,* pp. 59-60. See also, *2,953.15 Acres of Land, etc.* v. *United States, supra,* 350 F.2d 356, 360-361).

Other cases have recognized that the element of operation of aircraft with relation to the easement or property sought to be taken should be considered in determining severance damages. (See, *Johnson* v. *Airport Authority of City of Omaha* (1962) 173 Neb. 801, 806-808 [115 N.W.2d 426, 430-431]; and *Bowling Green-Warren County Airport Bd.* v. *Long* (Ky. 1962) 364 S.W.2d 167, 170-171.) The question of what damages are cognizable is discussed below (part II).

Finally, the city asserts that the landowners' claims for damage resulting to their remaining land cannot be asserted in the absence of compliance with statutes which would govern a claim for damages for inverse condemnation. (See, Gov. Code, § 900 et seq., particularly §§ 905 and 945.4; and *Dorow* v. *Santa Clara County Flood Control Dist.* (1970) 4 Cal. App.3d 389, 391 [84 Cal.Rptr. 518].) In *United States* v. *452.13 Acres of Land, etc., supra,* the court in applying *Brondum* granted a new trial because the jury had been permitted to consider the damages attendant

to the taking of an avigation easement, as well as those attendant to the flight clearance easement. The court noted that for the latter the landowner would have to bring a separate action under legislation permitting claims and actions against the federal government (207 F.Supp.at pp. 324-325). In that case, however, it was clear that the government only sought a flight clearance easement in its declaration of taking. ▆▆ Here, as has been pointed out, the issues are broad enough to embrace the entire airspace above the clear zone surface, and its general use for take-offs and landings. Since the question is one of severance damages, no claim is necessary. The situation is governed by *City of Fresno* v. *Hedstrom, supra,* where the court stated, "Plaintiff next argues that the failure of the defendants to file a claim against the city of Fresno is a complete bar against the recovery of the damages claimed by the defendants. However, the city did not set up this defense in the pleadings or at the trial and cannot now raise it for the first time upon appeal. Our attention has not been directed to any authority requiring the filing of a claim against a city in an action in condemnation brought by it. The filing of such a claim is not necessary." (103 Cal.App.2d 453, 460-461. Approved, *Wilson* v. *Beville* (1957) 47 Cal.2d 852, 861 [306 P.2d 789].)

In short, the city's arguments in support of its contention that it should be permitted to avoid liability for severance damages in this action, and to force the landowners to bring an independent action are rejected.

## II

The majority of the homes involved here were constructed and sold in 1963 and 1964 at an average price of $24,000, and were part of a tract development known as "Palm Homes." Between 1964 and 1966, the noise of planes from the nearby airport was not disturbing, since the use of runway 9R27L (to the north of the tract) was confined to light planes.

Shortly thereafter, however, the use of jet aircraft and the development of a clear zone at the end of the runway were necessitated by a changeover from piston and turboprop airplanes to jet aircraft and because of the increase in passenger traffic and in the volume of air travel. In 1968, when this action was tried, the ratio of jets to piston airplanes was four to one. Passenger traffic at the Oakland Airport, between 1962 and 1967, had increased 500 percent, and was steadily increasing every year. Passenger and air freight travel were projected to increase even more as time went on.

The planes were becoming larger and noisier, and there was evidence that the constantly increasing and continuing flights of jet aircraft at low levels, over the homes of defendants, caused excessive noise and vibrations, created fear for the personal safety of the occupants, and prevented normal

and reasonable enjoyment of the homes. Testimony indicated that the planes flying over the homes were large and flew at extremely high rates of speed, and often at elevations between 100 and 300 feet above the ground, as they approached the runway.

The city, through its appraisal witness, placed the reduction in value to the individual properties at 15 percent of their total value. The landowners' witness was of the opinion that the properties would not be salable to anyone who was informed about the area, but placed the damages at no less than $10,000 for each property (the verdict itself indicates a depreciation for each property of approximately 25 percent).

"The constitution does not . . . authorize a remedy for every diminution in the value of property that is caused by a public improvement. The damage for which compensation is to be made is a damage to the property itself, and does not include a mere infringement of the owner's personal pleasure or enjoyment. Merely rendering private property less desirable for certain purposes, or even causing personal annoyance or discomfort in its use, will not constitute the damage contemplated by the constitution; but the property itself must suffer some diminution in substance, or be rendered intrinsically less valuable by reason of the public use. The erection of a county jail or a county hospital may impair the comfort or pleasure of the residents in that vicinity, and to that extent render the property less desirable, and even less salable, but this is not an injury to the property itself so much as an influence affecting its use for certain purposes; but whenever the enjoyment by the plaintiff of some right in reference to his property is interfered with, and thereby the property itself is made intrinsically less valuable, he has suffered a damage for which he is entitled to compensation." (*Eachus* v. *Los Angeles etc. Ry. Co.,* supra, 103 Cal. 614, 617. See also, *People* v. *Symons, supra,* 54 Cal.2d 855, 858-859; *People* v. *Ricciardi* (1943) 23 Cal.2d 390, 395 [144 P.2d 799]; *Lombardy* v. *Peter Kiewit Sons' Co.* (1968) 266 Cal.App.2d 599, 602-603 [72 Cal.Rptr. 240] app. dism., 394 U.S. 813 [22 L.Ed.2d 748, 89 S.Ct. 1486]; *People* ex rel. *Dept. of Pub. Wks.* v. *Presley* (1966) 239 Cal.App.2d 309, 312 [48 Cal.Rptr. 672]; *People* ex rel. *Dept. Pub. Wks.* v. *Lundy, supra,* 238 Cal.App.2d 354, 359; *City of Fresno* v. *Hedstrom, supra,* 103 Cal.App.2d 453, 457; and *Arnerich* v. *Almaden Vineyards Corp.* (1942) 52 Cal.App.2d 265, 272 [126 P.2d 121].)[14]

---

[14]The distinction between consequential damages which must be suffered without compensation and the right to compensation for damages which so diminish the utility and value of land as to constitute a taking is recognized in the Airport Approaches Zoning Law (Gov. Code, § 50485 et seq. See particularly, §§ 50485.2 and 50485.15. Cf. *Morse* v. *County of San Luis Obispo* (1967) 247 Cal.App.2d 600, 603-604 [55 Cal.Rptr. 710], with *Peacock* v. *County of Sacramento* (1969) 271 Cal.App.2d 845, 856-863 [77 Cal.Rptr. 391]; and *Sneed* v. *County of Riverside* (1963) 218 Cal.

The city acknowledges that "excessive noise, vibration, discomfort, inconvenience or interference with the use and enjoyment of real property located adjacent to or in the vicinity of an airport" may cause a reduction in the market value of such real property, which in certain cases may give rise to an action for compensation. (See, Code Civ. Proc., § 1239.3, fn. 5, above; *Griggs* v. *Allegheny County, supra,* 369 U.S. 84, 88; *United States* v. *Causby, supra,* 328 U.S. 256, 261-263 [90 L.Ed. 1206, 1210-1211]; *A. J. Hodges Industries, Inc.* v. *United States* (1966) 355 F.2d 592, 594 [174 Ct.Cl. 259]; *Loma Portal Civic Club* v. *American Airlines, Inc.* (1964) 61 Cal.2d 582, 594 [39 Cal.Rptr. 708, 394 P.2d 548]; and commentaries fn. 1 above.) Nevertheless, it contends that such damages cannot be shown in this action, because a decrease in the value of property from noise, fumes, dust, increased traffic and similar factors is not compensable when they occur on property other than the property taken, when they are shared by all property owners generally, when they are occasioned by activities not proximately caused by the taking in question, or when they have antedated the current taking.

The principal cases relied upon by the city, *People* v. *Symons, supra,* 54 Cal.2d 855, and *City of Berkeley* v. *Von Adelung* (1963) 214 Cal. App.2d 791 [29 Cal.Rptr. 802], each stand for the proposition that the landowner "cannot recover for those damages caused by the manner in which the project is to be constructed or operated on the lands of others, but is limited to damages caused by the operation of the improvement on his land alone [citations]." (214 Cal.App.2d at p. 793; 54 Cal.2d at p. 861; and see, *Lombardy* v. *Peter Kiewit Sons' Co., supra,* 266 Cal.App. 2d 599, 603.) In *City of Berkeley* v. *Von Adelung, supra,* it was also noted, ". . . the asserted injury [tripled traffic with resultant increase in fumes and traffic noises] is not compensable because it is general to all property owners in the neighborhood, and not special to defendant [citations]." (214 Cal.App.2d at p. 793; and see, *People* ex rel. *Dept. of Pub. Wks.* v. *Presley, supra,* 239 Cal.App.2d 309, 317.) It is unnecessary to determine in this case whether the foregoing precedents have been rendered inapplicable to the noise and disturbance created by low flying airplanes by virtue of the provisions of section 1239.3 of the Code of Civil Procedure. (See fn. 5, and discussion of section in text above.) In this case the record shows that such flights are made through the airspace above the landowners' property which has been condemned in this action.

App.2d 205, 207-209 [32 Cal.Rptr. 318]; and see, Seago, *op. cit.,* fn. 7 above, 28 Md. L.Rev. 120, 124-135; Note, *Airport Zoning as a Height Restriction* (1962) 13 Hastings L.J. 397; Note, *Airplane Noise* (1961) 74 Harv. L.Rev. 1581, 1589-1590.) For attempts to regulate noise or activity cf. *American Airlines, Inc.* v. *Town of Hempstead* (2d Cir. 1968) 398 F.2d 369, with *Stagg* v. *Municipal Court* (1969) 2 Cal.App.3d 318 [82 Cal.Rptr. 578].)

The jury was expressly instructed: "An owner whose land is being condemned in part may not recover damages in the condemnation action to the remainder of his land caused by the manner in which the facility is to be operated on the lands of others. The detriment for which he may recover compensation is that which will result from the operation of the facility on his land alone."[15]

Some suggestion that such consequential effects may not be considered even where they relate to property actually taken may be gleaned from *People* ex rel. *Dept. Public Wks.* v. *Presley, supra,* 239 Cal.App.2d 309. There the state as part of a freeway project condemned the landowner's interest in the fee underlying a street for which the public held an easement, and the landowner's right of access to that street. The court upheld the trial court's refusal to permit the inclusion of any amounts for damages occasioned by "(1) the increased noise, fumes and annoyance which would result from the more heavily trafficked freeway, and (2) for loss of street parking privileges. . . ." The court held that the former damage was not compensable because it was shared generally with all other property owners in the neighborhood, following *City of Berkeley* v. *Adelung, supra* (239 Cal.App.2d at p. 311). Although the fee to the roadway was taken, it may be noted that the case is not one which creates a new use of the property taken, but it only involves an increase in the burden previously imposed by the easement for the street. Moreover, in airport cases, there is precedent for the fact that general disturbance of the neighborhood may rise to the point where compensation must be paid without regard for any taking for overflights. (See, Code Civ. Proc., § 1239.3, fn. 5, and cases cited fn. 11.)

The situation in this case is more analogous to that recognized in *People* v. *O'Connor* (1939) 31 Cal.App.2d 157 [87 P.2d 702]. In that case the state took a strip to widen the highway and thereby decreased the distance of the landowner's house from the highway by 10 feet. The court upheld an award of severance damages which was predicated upon testimony that the value of the residue would be decreased by factors which included among others, "that the increased closeness of the highway would

---

[15]The instructions follow forms of general application and cannot be said to be models for a case of this nature. No attack has been made on the instructions per se, as distinguished from the rulings discussed in this opinion. Nevertheless, an examination of the instructions given, as well as those offered and refused, reveals a failure to address them to the specific format of this case. Under similar circumstances the court in *City of Fresno* v. *Hedstrom* (1951) 103 Cal.App.2d 453 [229 P.2d 809], observed, "If the plaintiff desired to further clarify the issues in this respect, it was incumbent upon it to submit and request such instruction and if, as is contended by the plaintiff, the court should have submitted instructions as to the laws and regulations applicable to aerial navigation, no error resulted for the same reason. [Citation.]" (103 Cal.App.2d at p. 460.)

increase traffic noises and hazards." The court stated, "These elements of damages mentioned by the witnesses are not claimed by respondents as special damages, but are merely the reasons given by the experts for their opinions that the market value of the portion of the tract not taken would be diminished by reason of the taking of the 1/10-acre strip in front. They are not conjectural but actual admitted facts." (31 Cal.App. 2d at p. 159.) This precedent was recognized in *People* v. *Symons, supra,* as representing the situation where the factors complained of occurred on the land taken, as distinguished from occurring on adjoining property (54 Cal.2d at pp. 859-860).

 It is concluded that the court properly permitted evidence of the effect on the value of the subjacent land of excessive noise, vibration, discomfort, inconvenience and interference with the use and enjoyment of that land as such factors were occasioned by flights through the easement condemned. The jury was instructed to confine its deliberations to damages occasioned by use of the airspace which was condemned. It follows that any error in reading the provisions of section 1239.3 to the jury was not prejudicial, because they added nothing to what the landowners were otherwise entitled to have the jury consider.

In *City of Fresno* v. *Hedstrom, supra,* the court stated, "The testimony relative to the effect of low-flying aircraft over the 10-acre tract involved and over the remaining 30 acres of defendants' property was admissible only to determine the damage, if any, to the 30 acres insofar as it affected its market value. The materiality of such evidence depended upon a showing that the damages, if any, were caused or would be caused by the taking of the 10 acres. As pointed out by appellant, some of the evidence introduced over objection related to inconvenience and detriment suffered by defendants long prior to the filing of the instant action." (103 Cal.App. 2d at p. 457. See also, *Arnerich* v. *Almaden Vineyards Corp., supra,* 52 Cal.App.2d 265, 272.) The city contends that any damage to the subjacent property from overflights occurred following the establishment of the runway in question in 1943 or 1944; that the residences of the landowners, which, with few exceptions were constructed and sold in 1963 and 1964, were subject to height limitation zoning,[16] and were subject to established uses of the airspace which precluded the present assertion of any damages from noise and similar factors. On the other hand, there was evidence that prior to sometime in 1966 the runway in question had only been used by light planes with little disturbance to the

[16]*Peacock* v. *County of Sacramento* (1969) 271 Cal.App.2d 845 [77 Cal.Rptr. 391] indicates that zoning may not be used to condemn airspace without compensation (see fn. 14 above).

landowners. Evidence was introduced to show that by the time the condemnation action was filed, December 8, 1967, there had been a dramatic increase in the use of this runway by large jet planes which flew at high rates of speed, at elevations as low as 100 to 300 feet over the lands in question, with attendant noise and other disturbances which substantially impaired the use and enjoyment of the property. Under these circumstances the city cannot rely upon an established right to inflict the damage caused by the later flights. (See, *A. J. Hodges Industries, Inc.* v. *United States, supra,* 355 F.2d 592, 599 [174 Ct.Cl. 259]; *Avery* v. *United States* (1964) 330 F.2d 640, 642-643 [165 Ct.Cl. 357]; and *Aaron* v. *United States* (1963) 311 F.2d 798, 800-801 [160 Ct.Cl. 295].) The evidence warrants the conclusion that "The glide path for the . . . runway is as necessary for the operation of the airport as is a surface right of way for operation of a bridge, or as is the land for the operation of a dam." (See, *Griggs* v. *Allegheny County, supra,* 369 U.S. 84, 90 [7 L.Ed.2d 585, 589].) The evidence also reflects that the intense new use accompanied the taking of the airspace used. The implied finding that the loss in market value claimed by the landowners directly and proximately resulted from the use of the airspace which has been taken is supported by the record.

The city also asserts that the fact that the severance damages were not separately assessed precludes justification of the judgment on the theory that it is predicated on severance damages, rather than on an award for the taking of rights which the city did not directly seek to condemn. The landowners' appraiser did not make a separate determination as to the value of the airspace taken and the decrease in the market value of the subjacent land and improvements from the use of that airspace, and he was unable to segregate the two. He did, however, assess the total depreciation in value for the rights taken at $10,000. The city's appraiser testified, ". . . my opinion of the taking of the easement itself in the air space is that it has no value, that the taking of this easement in itself is not damaging the property, but it's the—I shouldn't say it's not damaging the property. Now, the damage, in my opinion, occurs to the rest of the property by reason of the taking." He fixed the severance damage as equivalent to 15 percent of the value of the subjacent premises prior to the taking. He further testified, "In my opinion there would be practically no damage at all to the properties if the only restriction was a height limitation restriction. It would be a nominal sum. I originally estimated this at $500 per parcel. Q. Then does the other aspect, the incidents of operation of aircraft flights in your opinion create the remainder of the sum shown on that exhibit? A. Yes."

The situation is analogous to that found in *Pacific Gas & Elec. Co.* v. *Hufford, supra,* 49 Cal.2d 545, wherein it was contended that similar

computations with respect to the taking of an easement for a transmission line resulted in double damages. The court approved a computation based on the before and after value of the servient tenement which included both the value of the easement taken and the severance damages to the remaining property. (49 Cal.2d 545, 552-555. See also, *People* v. *Ricciardi, supra,* 23 Cal.2d 390, 401; and *San Bernardino County Flood Control Dist.* v. *Sweet, supra,* 255 Cal.App.2d 889, 904.)

### III

██ The conclusions of law refer respectively to, "I. . . . an air easement in the air space above Parcel No. . . . shall be condemned for the use of plaintiff for airport purposes as more particularly described in plaintiff's complaint on file herein"; "II. That the air easement so taken is condemned pursuant to Sections 1239.2 and 1239.3 of the Code of Civil Procedure and includes all rights and interests described in said sections"; and "III. That the payment into court of said sum of money as hereinabove specified is in full payment for the easement so taken, as set forth in the complaint, and for all damages of every kind and nature suffered by said defendants by reason of the taking of said easement pursuant to said Sections 1239.2 and 1239.3 of the Code of Civil Procedure and the construction of the improvement in the manner proposed by plaintiff." Recitals similar to those set forth under "I" and "III" above, are found in the judgment.

As has been noted, the reference to section 1239.3 is improper. ██ Moreover, the city is entitled to a judgment which will protect it from further claim of damages. (See, *Davis* v. *United States* (1961) 295 F.2d 931, 934 [155 Ct.Cl. 418].) The jury was instructed, ". . . the plaintiff will acquire all rights sought to be taken by its complaint. All of the compensation to which the defendants are entitled by reason of this taking and damages to the remainder by reason of the operation of the airport is to be ascertained and paid in this proceeding and they will not receive in the future any further compensation therefor." (See, *People* ex rel. *Dept. Pub. Wks.* v. *Lundy, supra,* 238 Cal.App.2d 354, 361-362.)

The conclusions of law should be amended by the deletion of the reference to section 1239.3 in paragraph "II"; and the conclusions of law and judgments by the substitution of the following language for paragraph "III" of the conclusions of law and the commensurate language in the judgments:

"That the payment into court of said sums of money as hereinabove specified is in full payment for the easement so taken, as set forth in the

complaint, and for all damages of every kind and nature suffered by said defendants by reason of the taking of said easement pursuant to said section 1239.2 and the use of the airspace which is the subject thereof in connection with the adjacent airport of plaintiff for the landing and taking off of aircraft, including in such damages compensation for excessive noise, vibration, discomfort, inconvenience and interference with the use and enjoyment of defendants' remaining property, and any reduction in the market value of such property by reason of the operation of aircraft to and from the plaintiff's airport through the airspace which is the subject of said easement."

The judgments are reversed and the cases are remanded for correction of the conclusions of law and judgments *nunc pro tunc* as of the time of their original entry, in accordance with the views expressed in this opinion. The judgments shall draw interest from the date of their original entry. The costs of appeal shall be taxed to appellant city.

Molinari, P. J., and Elkington, J., concurred.

A petition for rehearing was denied on December 23, 1970, and the following opinion was then rendered:

**THE COURT.**— In their petition for rehearing the landowners for the first time contend that interest should be allowed from the date of the filing of the complaint because their damage had occurred prior to that date. (See Code Civ. Proc., § 1255b, subd. (a)(2); *Youngblood* v. *Los Angeles County Flood Control Dist.* (1961) 56 Cal.2d 603, 611-612 [15 Cal.Rptr. 904, 364 P.2d 840]; *Heimann* v. *City of Los Angeles* (1947) 30 Cal.2d 746, 758-760 [185 P.2d 597]; and *Riverside County Flood etc. Dist.* v. *Halman* (1968) 262 Cal.App.2d 510, 514-517 [69 Cal.Rptr. 1].) This contention is rejected. **(17)** "The right to interest on a condemnation award springs from the judgment. [Citations.] Ordinarily, interest commences from the date of entry of the judgment. [Citations.] However, where property is taken or damaged prior to judgment, the condemnee's right to just compensation includes the right to have the award draw interest from the date of possession [citations], or the date the property was damaged [citations]. The rules are now codified in section 1255b of the Code of Civil Procedure which provides that an award shall draw interest from the earliest of the following: '(1) The date of the entry of judgment. (2) The date that the possession of the property sought to be condemned is taken or the damage thereto occurs. (3) The date after which the plaintiff may take possession. . . .' (Code Civ. Proc., § 1255b.) Plaintiff not having obtained an order for immediate possession, the right to interest in the present case turns upon the question whether the property was taken

or damaged prior to judgment." (*Riverside County Flood etc. Dist.* v. *Halman, supra,* 262 Cal.App.2d at pp. 514-515.) The landowners, having failed to raise the question of interest below, and not having filed a cross-appeal, may not secure review of the question of interest at this stage of the proceedings.

 The landowners also contend in their petition for rehearing that the opinion improperly provides that the costs of appeal shall be borne by each party as incurred. This contention is meritorious. A landowner has the constitutional right to be free from costs in any condemnation action seeking to acquire his property rights for public use, including his costs on appeal. (See *In re Redevelopment Plan for Bunker Hill* (1964) 61 Cal.2d 21, 68-71 [37 Cal.Rptr. 74, 389 P.2d 538], cert. den. 379 U.S. 899 [13 L.Ed.2d 174, 85 S.Ct. 185], app. dism. 379 U.S. 28 [13 L.Ed.2d 173, 85 S.Ct. 190]; and *Sacramento Drainage Dist.* ex rel. *State Rec. Bd.* v. *Reed* (1963) 217 Cal.App.2d 611, 612-613 [31 Cal.Rptr. 754].)